FILED
10/12/2018
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
May 31, 2018 Session Heard at Nashville

## STATE OF TENNESSEE v. JIMMY WILLIAMS

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Shelby County
No. 14-04175      Lee V. Coffee, Judge**

_____

**No. W2016-00946-SC-R11-CD**

_____

We accepted this appeal to determine whether a notice that the State intended to seek enhanced sentencing in one case is sufficient to provide notice that the State intended to seek enhanced sentencing in a subsequent unrelated case involving the same defendant. The defendant, Jimmy Williams, was convicted of aggravated assault and sentenced as a career offender to serve fifteen years in the Tennessee Department of Correction. At trial, the defendant unsuccessfully objected to his classification as a career offender based on the State's failure to file a timely notice of its intent to seek enhanced sentencing, and the Court of Criminal Appeals agreed with the trial court's ruling. He now appeals the sentencing issue and also argues that the evidence was insufficient to support his conviction. We hold that the State must file a timely and proper notice in each case for which it intends to seek enhanced punishment. Consequently, the defendant in this case did not receive proper notice of the State's intention, and therefore, the trial court should have sentenced him as a Range I, standard offender. However, the evidence was sufficient to support his conviction; therefore, we affirm the defendant's judgment of conviction for aggravated assault but modify his sentence and remand for entry of a corrected judgment form in accordance with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal
Appeals Affirmed in Part; Modified in Part and Remanded**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

Laurie W. Hall (at trial and on appeal) and Juni Ganguli (at trial), Memphis, Tennessee, for the appellant, Jimmy Williams.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Benjamin A. Ball, Senior Counsel; Amy P. Weirich, District Attorney General;

and Abby Wallace, Assistant District Attorney General; for the appellee, State of Tennessee.


## OPINION

### I. Facts

On July 27, 2008, Memphis police from the Airways precinct responding to a 9-1-1 call encountered a disheveled woman in a field behind a Kroger grocery store. She reported that she had been assaulted by a man who was then fleeing the area. Onlookers identified the man as the defendant, Jimmy Williams. The police chased the defendant on foot and took him into custody. However, the police, in consultation with the district attorney general's office, decided not to pursue charges against him. Several years later, the district attorney general's office sought charges in this case because of information that surfaced in an unrelated investigation. On August 26, 2014, the grand jury returned its indictment charging the defendant with two alternate counts of aggravated rape, and the case proceeded to trial on February 2, 2016.

At trial, the victim testified that she first encountered the defendant in the very early morning hours of July 27, 2008, at a Mapco gas station. He mentioned to her that he knew a shortcut she could use to get home, and when she saw him a second time later in the morning, she let him show her the shortcut. The victim testified that the shortcut was a well-traveled path through a field behind Kroger. She told the defendant that she did not want to go down the path with him, but he grabbed her and told her she was not going anywhere. The victim explained that she had torn ligaments in her knee and could not run away. The victim said that over the next two hours, the defendant beat her in the head with his closed fists, struck her with a box cutter handle, and forced her to perform fellatio twice. She recalled striking him with a glass bottle, and although she did not remember the glass breaking, she believed that she must have cut him because she later learned that spots of his blood were on her shirt. The victim testified that men passing by saw her and the defendant. The ordeal ended when the police arrived, causing the defendant to flee. Subsequently, the victim went to the hospital with head injuries and black eyes and then to the Rape Crisis Center for examination.

The victim admitted that she had pleaded guilty to theft of property more than thirty-five times. She also admitted that she had been selling drugs the night that the defendant assaulted her. She confirmed that the defendant did not vaginally or anally penetrate her, despite her statement to the police to the contrary. She blamed her lack of specific memories on her head trauma and the passage of time. The victim also made clear that she was not pleased with the way that the police handled her case or the way

they treated her. She stated that she believed her statements to the police were not faithfully transcribed in the written statement.

Two passers-by, Billy Mukes and Horace Granger, testified about the events of the morning of July 27, 2008. Both men lived near the field behind Kroger, and they said they heard a woman screaming on the morning in question. They walked into the field and saw a man and woman sitting together. Mr. Mukes said that he saw "a man and woman sitting on the ground. He had his arm around her neck. But after she [saw] us, she wasn't screaming and hollering. She quit." The men left the field, but when they heard the woman screaming again, Mr. Mukes called 9-1-1. Shortly thereafter, they saw the defendant, whom they both personally knew, running away from the police.

One of the police officers who responded to Mr. Mukes' 9-1-1 call described the victim as "shaken up . . . real distressed and just real dirty, like she had been . . . wrestling or something like that." She had abrasions on her skin and complained that she had a head injury. Crime scene investigator Charles Cathey testified that he found a box cutter in the field that might have had a spot of blood on it. Mr. Cathey also photographed the victim at Methodist Central Hospital and testified that the victim "had bruising on her face, neck and arm." The nurse who examined the victim at the Rape Crisis Center stated that she had multiple injuries on her face, arms, and upper legs. The nurse collected swabs from the victim's mouth, anus, and vagina for later testing. The serology and DNA analysis expert testified that the swabs collected from the victim during the sexual assault examination were negative for semen and the spots of blood on the victim's shirt were consistent with the defendant's DNA. The expert further testified that she found DNA from two individuals on the box cutter recovered from the scene. She was able to exclude the victim as a contributor to the DNA from the box cutter, but the results were inconclusive as to the defendant.

Following the close of proof, the defendant requested that aggravated assault be included as a lesser charge in the jury instructions,[1] and in the discussion pertaining to that request, the trial court informed the defendant that if he were convicted of aggravated assault, he would be a career offender. The case was submitted to the jury, and the jury began its deliberations at 1:39 p.m. on February 4, 2016. The State filed its notice of intent to seek enhanced punishment at 1:45 p.m. that day. After continuing its

---

[1] As the trial court noted in its discussion, the defendant's request amounted to an effective amendment of the indictment because aggravated assault is not otherwise considered a lesser-included offense of aggravated rape. *See Demonbreun v. Bell*, 226 S.W.3d 321, 326 (Tenn. 2007) (discussing amendment of the indictment).

deliberations on the morning of February 5, 2016, the jury acquitted the defendant of aggravated rape on both counts but found him guilty of aggravated assault as a lesser-included offense on Count 1.

At the sentencing hearing, the State submitted the presentence report as Exhibit A and certified copies of the defendant's felony convictions as Exhibits B and C.[2]  The defendant submitted as Exhibit D the State's notice of intent to seek enhanced punishment, which was filed on February 4, 2016, after the jury began its deliberations. Sua sponte, the trial court submitted as Exhibit E the State's notice of intent to seek enhanced punishment filed in case number 12-06403 on January 27, 2014.  The State contended that the defendant should be sentenced as a career offender, but the defendant countered that, because the State had not filed a pre-trial notice of intent to seek enhanced punishment, he should be sentenced as a Range I standard offender.

In its oral sentencing findings, the trial court noted that the defendant had the requisite prior convictions to qualify as a career offender and stated that in a prior case, the court had discussed the defendant's offender classification with him and the State had filed a proper notice.  The court further noted that the State's notice in the present case was not filed until after the jury had already begun deliberating, at which point the procedural remedy—a reasonable continuance pursuant to Tennessee Rule of Criminal Procedure 12.3—was no longer viable.  The trial court then determined that the defendant had sufficient notice of the State's intent to seek sentence enhancement because he had both actual and constructive notice via the notice filed in the other case and through knowing his own record and the court's informing him of his offender classification.  The trial court also found that the defendant had not shown that he was prejudiced by the untimely filing of the State's notice.  The trial court then sentenced the defendant as a career offender to fifteen years for the Class C felony of aggravated assault.

The defendant appealed to the Court of Criminal Appeals, arguing that the evidence was insufficient to support his conviction for aggravated assault and that the trial court erred by sentencing him as a career offender. *State v. Williams*, No. W2016-00946-CCA-R3-CD, 2017 WL 4079514, at *5-7 (Tenn. Crim. App. Sept. 13, 2017).  The Court of Criminal Appeals affirmed both his conviction and his sentence. *Id.* at *10.  The defendant applied to this Court for permission to appeal, which we accepted to consider

---

[2] The following is a list of the defendant's convictions with sentences noted parenthetically: attempted rape (5 years); robbery (5 years concurrent with the attempted rape sentence); attempted aggravated assault (2 years in workhouse after probation revocation); burglary (3 years); attempted carjacking (6 years in workhouse); attempted arson (2 years after probation revocation); rape (7 years); and aggravated assault (2 years).

- 4 -

as an issue of first impression whether a notice to seek enhanced punishment filed in one case provided fair notice to the defendant that the trial court would sentence him as a career offender in a subsequent case.

## II. Analysis

### A. Sufficiency of the Evidence

The first issue the defendant presented for our review was whether the evidence adduced at trial supported his conviction for aggravated assault. The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, the defendant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977) (quoting *Farmer v. State*, 343 S.W.2d 895 (Tenn. 1961)).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *see also State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990) (citations omitted). This Court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379. Because a jury conviction removes the presumption of innocence that the defendant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted defendant, who must demonstrate to this Court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (quoting *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

The jury convicted the defendant of aggravated assault, defined for purposes of this case as intentionally or knowingly causing bodily injury to a person when the assault involved using or displaying a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-101, -102 (2006). The defendant argues that the only evidence supporting his conviction was the victim's testimony. He maintains that the jury must not have found the victim credible because if they fully believed her testimony, they would have convicted him as charged of aggravated rape. However, credibility is a question of fact that is best left in the hands of the jury.

> The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citation omitted). Moreover, the State introduced physical evidence corroborating at least parts of the victim's testimony. Her multiple injuries were well-documented, and a box cutter was found at the scene. Thus, we hold that the evidence was sufficient to support the defendant's conviction.

## B. Sufficiency of Notice

In this case, the trial court sentenced the defendant as a career offender, meaning that the defendant would serve the maximum Range III sentence for a Class C felony with a release eligibility of sixty percent. Tenn. Code Ann. § 40-35-108 (2014). The defendant argues that he did not receive the requisite statutory notice that the State intended to seek enhanced sentencing and that therefore, the trial court should have sentenced him as a standard, Range I offender. *See* Tenn. Code Ann. § 40-35-202(a) (2014). The State maintains that the defendant received fair notice of its intent to seek enhanced punishment because it had filed a timely and sufficient notice of enhanced punishment in a previous case, the defendant was aware of his criminal record, the trial court had informed the defendant that he would be sentenced as a career offender, and the defendant was not prejudiced by any deficiency of notice. This issue, sufficiency of the State's notice of its intent to seek enhanced punishment, is a question of law that we review de novo with no presumption of correctness. *State v. Livingston*, 197 S.W.3d 710, 712 (Tenn. 2006).

We begin with a brief summary of the sentencing structure as it pertains to the case at hand. The offender classifications—standard, multiple, persistent, career, and

repeat violent offender—in our current sentencing scheme are an offshoot of the habitual criminal statutes of yesteryear. David Demar Ayliffe, Comment, Criminal Procedure—*Tennessee v. Carter: The Strict Requirement of Notice Under Tennessee's Recidivist Sentencing Statutes*, 35 U. Mem. L. Rev. 145, 160-164 (2004) (providing a detailed discussion of the history and development of the statutory notice requirements in Tennessee). The legislature codified the offender classifications in the Sentencing Reform Act of 1982. *Id.* at 161. The offender classifications are based on the number of a defendant's prior felonies. Tenn. Code Ann. §§ 40-35-106(a), -107(a), -108(a) (2014). The classifications relate both to the sentencing range to which a defendant is exposed and to a defendant's release eligibility. *Id*. §§ 40-35-106(c), -107(c), -108(c), -501(c)-(f) (West 2016).

The district attorneys general have the discretion whether to pursue enhanced sentencing based on offender classification. *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990) (stating that prosecutors have the discretion to seek enhanced punishment). Tennessee Code Annotated section 40-35-202(a) provides that "[i]f the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea." This section "requires, at a minimum, that the State file: (1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction[s], the dates of the convictions, and the identity of the courts of the convictions." *Livingston*, 197 S.W.3d at 713-14 (footnote omitted). If the State does not comply with the pretrial filing deadline, the defendant may request a reasonable continuance of the trial. Tenn. R. Crim. P. 12.3(a).

While the issue presented in this case is technically an issue of first impression, there are numerous cases from this Court about notice requirements for sentencing. In *Adams*, this Court explained the purpose of the notice requirements:

> The purpose of [Tennessee Code Annotated section 40-35-202(a)] is to provide fair notice to an accused that he is exposed to other than standard sentencing. It is intended to order plea-bargaining, to inform decisions to enter a guilty plea, and to aid to some extent trial strategy. Notice is important not only in preparation for a sentencing hearing, but in evaluating the risks and charting a course of action before trial. The Legislature has expressly placed the responsibility of notice upon the district attorney, along with the discretion to seek enhanced sentencing.

*Adams*, 788 S.W.2d at 559. This Court has also explained that when the State substantially complies with the notice requirement, the burden shifts to the defendant to

inquire about any ambiguities in the notice and to show that any problem with the notice prejudiced the defendant. *State v. Patterson*, 538 S.W.3d 431, 438 (Tenn. 2017).[3] Problems with the notice include defects in the content and untimeliness of the filing. *Id.* at 442. If a notice document is so defective as to amount to no notice at all, then the State has not met its burden, and the defendant does not have to show prejudice. *Adams*, 788 S.W.2d at 559. If no pretrial notice is filed at all, the trial court must sentence the defendant as a standard, Range I offender. *See State v. Cooper*, 321 S.W.3d 501, 507 (Tenn. 2010) (citing *State v. Pender*, 687 S.W.2d 714, 719-20 (Tenn. Crim. App. 1984)). If notice is filed up to the first day of trial, a defendant must request a continuance to preserve his objection to the sentence enhancement. *State v. Stephenson*, 752 S.W.2d 80, 81 (Tenn. 1988). If proper notice is timely filed, but a superseding indictment charges additional offenses, then the State must file a new notice for the additional offenses. *State v. Carter*, 121 S.W.3d 579, 584-86 (Tenn. 2003).

In this case, the parties agree that the notice document filed for the case under submission, indictment number 14-04175, did not comply with the statute because it was not timely filed. *See Cooper*, 321 S.W.3d at 507 (holding that a post-trial notice was ineffective). The State argues that the notice it filed in another case for the same defendant, indictment number 12-06403,[4] sufficed to provide fair notice to the defendant, especially in conjunction with the trial court's warnings to the defendant that he would be sentenced as a career offender. The State and the courts below spent significant time discussing whether the defendant had actual and/or constructive notice,[5] but the crux of the issue can be framed thusly: Can a notice filed in one case provide fair notice of the State's intention to seek enhanced punishment in another case? We hold that it cannot.

The situation presented herein is closely akin to the superseding indictment cases. In the paradigmatic case of *Carter*, the original indictment included two charges: possession with intent to deliver 300 grams or more of a substance containing cocaine

---

[3] As this Court noted in *Patterson*, a case about the repeat violent offender notice requirement, the analysis of the notice requirement is the same for repeat violent offenders as for multiple, persistent, and career offenders. *Patterson*, 538 S.W.3d at 442.

[4] The defendant was acquitted in case number 12-06403.

[5] This Court has defined actual notice as "'knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts'" and constructive notice as "'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Kirby v. Macon County*, 892 S.W.2d 403, 409 (Tenn. 1994) (quoting *Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950); *Black's Law Dictionary* 1062 (6th ed. 1990)).

and a firearms charge. *Carter*, 121 S.W.3d at 583. A superseding indictment changed the amount of cocaine and added additional charges of conspiracy and money laundering. *Id*. The State filed an enhancement notice for the original indictment but not the superseding indictment. *Id.* at 583-84. When the defendant appealed, the Court of Criminal Appeals concluded that

> the notice was sufficient because one of the offenses charged in the second indictment was identical to one charged in the first indictment, all of the charges arose out of the same series of events during the same time frame, and the defendant and his counsel were on notice of the potential for sentence enhancement.

*Id.* at 585 This Court disagreed, holding that the defendant had sufficient notice of enhanced sentencing for the original offenses, even as modified in the superseding indictment, but did not have sufficient notice of enhancement for at least the conspiracy charge in the superseding indictment. *Id.* at 586.

In the present case, the notice on which the State relies was filed in a totally separate case, wholly unrelated to the case at bar. Reasoning from *Carter*, if a new notice must be filed when additional charges are indicted in the same case, a new notice must certainly be filed when there is a different case altogether. While it holds true that notice is sufficient if the defendant is not misled nor surprised, *Livingston*, 197 S.W.3d at 715-16, the unwritten presupposition underlying the notice cases is that the notice of enhancement is filed in the same case.

The Court of Criminal Appeals and the trial court relied on a case from the Court of Criminal Appeals, *State v. Debro*, 787 S.W.2d 932 (Tenn. Crim. App. 1989), in their conclusion that a notice filed in another case would suffice to provide notice in the case at bar. In *State v. Debro*, the State timely filed an enhancement notice that contained a defect not discovered until after the jury had been impaneled. *Debro*, 787 S.W.2d at 933. The State had also filed a correct enhancement notice for the same defendant in what the court termed a "companion case." *Id.* The *Debro* court, applying *Stephenson*, 752 S.W.2d 80, concluded that the defendant was required to show that she had been prejudiced by the defective notice and that she affirmatively could not demonstrate prejudice when "the defendant had both actual knowledge of her release status [which had been incorrectly stated on the enhancement notice] and constructive notice of the state's intent through the notice filed in the companion case." *Debro*, 787 S.W.2d at 934.

The Court of Criminal Appeals in the case under submission, following *Debro*, determined that Mr. Williams was required to demonstrate prejudice and that he was unable to show prejudice because of the notice filed in the previous case. *Williams*, 2017

WL 4079514, at *9. However, *Debro* is inapposite to this case because there was in fact a timely notice filed in *Debro*, although it contained a minor defect. *See Debro*, 787 S.W.2d at 933. The State filed no notice in this case before trial, and notice filed in another case cannot serve to redeem the State's mistake. The statute and rule require the filing of a notice before a trial *in the case at bar*, not a blanket notice that is good in perpetuity. This Court has held that when there is no effective notice filed prior to trial, defendants are not required to show prejudice because of the importance of notice to "intangible considerations such as plea negotiations." *See Patterson*, 538 S.W.3d, 440-41 (discussing *Cooper*, 321 S.W.3d at 507, and *State v. Gilliland*, 22 S.W.3d 266, 276 (Tenn. 2000)).

Therefore, the defendant in this case, having received no properly filed notice of the State's intent to seek enhanced punishment, is entitled to relief; thus, we modify his offender classification from career offender to Range I, standard offender.

Consequently, the length of the defendant's sentence must also be modified because the sentencing range for his Class C aggravated assault conviction is three to six years. In the interest of judicial economy and because the record includes the facts necessary for a sentencing determination, we modify the sentence length to six years. *See* Tenn. Code Ann. § 40-35-401(c)(2) (2014); *State v. Bise*, 380 S.W.3d 682, 705 n.41, 707 (Tenn. 2012) (allowing for the possibility of appellate court's modifying a sentence when the record is sufficient). Although the trial court did not make any specific findings regarding enhancement or mitigating factors because career offenders are automatically sentenced to fifteen years for a Class C felony,[6] it discussed the defendant's prior convictions at length. The trial court determined that the defendant was not a favorable candidate for alternative sentencing and that confinement was necessary to avoid depreciating the seriousness of the offense. This determination is supported by the record. The State's notice of enhancement factors includes, among other factors, that the defendant "has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1) (2014). It is abundantly clear from the record that this enhancement factor applies considering the defendant's lengthy criminal record. The defendant did not file any mitigating factors. Taking all of the sentencing considerations into account, we conclude that a sentence of six years as a standard offender is justified under the facts and circumstances of this case. We hereby remand this matter to the trial court for entry of a corrected judgment in accordance with this opinion.

---

[6] *See* Tenn. Code Ann. § 40-35-108(c); -112(c)(3) (2014).

**CONCLUSION**

We conclude that the evidence was sufficient to support the defendant's conviction for aggravated assault but that he did not receive proper notice of the State's intent to seek enhanced punishment. Therefore, we affirm the defendant's judgment of conviction but modify his sentence for aggravated assault to six years as a standard offender. Costs of this appeal are taxed to the State of Tennessee.

_____
ROGER A. PAGE, JUSTICE