IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 4, 2025 at Jackson

## STATE OF TENNESSEE v. DARRELL SCOTT WALLIS

**Appeal from the Circuit Court for Maury County**
**No. 2023-CR-30177          Russell Parkes, Judge**
_____

### No. M2024-00940-CCA-R3-CD
_____

Defendant, Darrell Scott Wallis, was indicted by a Maury County Grand Jury on three counts of automobile burglary. Pursuant to a plea agreement, he pled guilty to one count of automobile burglary to receive a Range II sentence at thirty-five percent with the trial court to determine the length of sentence and manner of service. The trial court sentenced Defendant to serve three years and six months, suspended to probation after service of twelve months of incarceration. Defendant appeals, arguing that the trial court abused its discretion by ordering the split confinement sentence. Following our review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

William C. Barnes, Jr., Columbia, Tennessee, for the appellant, Darrell Scott Wallis.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Brent Cooper, District Attorney General; and Ross M. Boudreaux, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On August 25, 2022, Defendant was indicted by a Maury County Grand Jury for three counts of burglary of an automobile. Following the indictment, the State filed a notice of intent to seek enhanced punishment setting out twelve prior convictions of Defendant. On February 8, 2024, Defendant pled guilty to one count of burglary of an automobile, an E felony. Pursuant to the plea agreement, Defendant was to be sentenced as a Range II

offender to two to four years at thirty-five percent, with the length of sentence and manner of service to be determined by the trial court at a sentencing hearing. The remaining two counts were dismissed. The facts underlying the plea were set out at the plea submission hearing as follows:

> [O]n August the 25th of 2022, the defendant was found by Ricky Stanfill on his property that also belonged to his father at 1997 Roberts Bend Road . . . in Maury County, Tennessee. When he did so, [Mr. Stanfill] found that the offender was holding a keychain full of keys that belonged to [Mr. Stanfill]. Mr. Stanfill took the keys from the defendant and noticed one of the keys belonged to [Mr. Stanfill]'s truck. Mr. Stanfill then noticed that the truck to which the keys belonged was moved from the back of the house to the side of the house.
>
> It was later determined that the defendant had entered two additional other vehicles, and . . . defendant spent a considerable amount of time walking around the property while the occupants were not there.

Defendant acknowledged that he understood the rights he was waiving by pleading guilty and the sentencing options available to the trial court at sentencing. The trial court accepted the plea agreement and scheduled a sentencing hearing.

At the sentencing hearing on May 9, 2024, the State introduced a presentence report ("PSR"), in which Defendant reported a previous methamphetamine addiction but explained that he had not used any controlled substances in the last twenty years. Defendant also reported that he "ha[d] been battling cancer for several years" and was taking steroids to strengthen his immune system. Defendant reported employment at Cedar Hills Stallion Station completing "business administrative work" and that he had his own business as a horse trainer. His validated risk assessment resulted in a score of low risk to reoffend.

The trial court noted that the PSR did not list any prior convictions sufficient to render Defendant a Range II offender and questioned whether the plea was out of range. The State explained that Defendant's range was based upon twelve out-of-state convictions reflected in a report by the National Crime Information Center ("NCIC") and that it had been unable to obtain certified copies of the convictions because the states wherein Defendant was convicted were "just difficult to deal with." The State advised the trial court that it intended to cross-examine Defendant regarding his prior convictions.

The State's only witness at the hearing was the victim, Ricky Stanfill, who testified about the impact that Defendant's criminal conduct had on him and his family. Mr. Stanfill

stated, "[Defendant] has destroyed what I thought I had as a home place of privacy. He destroyed my family's thoughts. . . . It's really tore my family apart." Defendant did not cross-examine Mr. Stanfill.

Defendant testified that he was disoriented on the day of the burglary and entered the Stanfill residence because he heard someone at the back of the property "calling for help." Defendant also claimed to lack any memory of entering Mr. Stanfill's vehicle or of searching through the vehicle's compartments. He testified that he believed he was at the home of an acquaintance.

Defendant also testified that he was undergoing chemotherapy for osteomyelitis and neuroblastoma and was taking prescription medications for both cancers and for a separate heart condition at the time of the incident. He further testified that the combination of his treatments and medications caused him to be "tired" and "confused" and that, at the time of the incident, he "was not able to make sound decisions." Defendant claimed to be remorseful for his actions, offering to reimburse Mr. Stanfill for any damage he caused. Defendant also briefly spoke about his previous methamphetamine addiction; however, he testified that he had not been under the influence of methamphetamine for over twenty years.

On cross-examination, the State questioned Defendant regarding the twelve convictions reflected on Defendant's NCIC report. Of those twelve convictions, Defendant admitted that while serving in the military, he served a civil commitment for vehicle theft. He also admitted to five California convictions: 1998 grand theft; 1992 forgery; 1995 theft and unlawful taking or driving a vehicle; 2008 petty theft; and 2006 for taking a vehicle without consent. He also admitted to a 2013 Idaho conviction for writing a bad check. He said he was aware of an outstanding warrant in Idaho for "both an insufficient funds check and grand theft . . . total of $25,000," explaining those charges were related to a divorce. He claimed to lack memory of a 1992 grand theft conviction in California as well as two 2013 grand theft convictions in Idaho. Defendant expressly denied three additional California convictions shown on his NCIC report: two vehicle theft convictions and a 2003 second degree burglary conviction. He testified that all of his convictions were related to his drug addiction which he no longer had.

Dustin Borror, Defendant's employer, testified that Defendant's medical treatments appeared to cause Defendant's emotions to be a "little bit wonky." Nevertheless, he stated that Defendant still completed his duties of employment satisfactorily.

The State argued that confinement was necessary "to protect society" from Defendant, who had a "long history of criminal conduct," and to "avoid depreciating the seriousness of the offense." Moreover, the State relied on the impact that Defendant's

conduct had on Mr. Stanfill and his family. Defendant argued in favor of probation, asking the trial court to consider Defendant's remorse and ability and willingness to pay any restitution.

The trial court considered the statements made at the plea hearing, the evidence entered at the sentencing hearing, the presentence report, and the principles of sentencing outlined in Tennessee Code Annotated sections 40-35-102 and -103. The trial court also stated that it considered the statistical data provided by the administrative offices of the court for sentencing practices for similar offenses in Tennessee and the validated risk and needs assessment attached to the PSR. The trial court noted the limited prison capacity and state funds for maintaining prisons, stating that "felons committing the most severe offenses, possessing criminal histories which evidence a clear disregard for the laws or morals of society and further evidencing failures of past efforts and rehabilitation shall be given first priority regarding sentencing."

The trial court found that Defendant had a "previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," T.C.A. § 40-35-114(1), and that this enhancement factor "weigh[ed] very heavy in the [c]ourt's determination in an imposition of a sentence." The trial court found that no additional enhancement factors applied.

The trial court then found that only one mitigating factor applied—that "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury." T.C.A. § 40-35-113(1). The trial court expressly rejected factor three—whether "substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense," finding Defendant "not to be credible as it relates to this brain fog." The trial court specifically recalled Defendant's "demeanor on the witness stand, as well as his credibility, which has clearly been attacked . . . by the State with these many prior convictions for essentially the exact same criminal conduct."

The trial court next considered the manner of service, stating that it had considered the PSR, Defendant's physical and mental condition, and his social history. It expressly found that Defendant's social history was "not good" and his physical and mental condition were "concerning." It further considered the burden the State would face in providing Defendant with adequate medical care for his condition if incarcerated but ultimately found such factor to be indeterminate. The trial court also noted the impact Defendant's conduct had on Mr. Stanfill and his family and Defendant's criminal history. The trial court determined that "[Defendant] clearly hadn't learned his lesson from the first [twelve] convictions" and that it did not reasonably appear that "this defendant will abide by the terms of probation." Finally, the trial court found that the interest of society to be protected from the "possib[ility of] future criminal conduct in this case, while not great, are [sic]

certainly of concern for this court" and that "less restrictive measures other than confinement have not worked in the past."

Based upon the foregoing considerations, the trial court imposed a sentence of three years and six months, suspended to probation after service of one year in confinement.

Before briefing, this court granted Defendant's motion to accept his late-filed notice of appeal and deemed the notice timely as of the date of the order. Defendant's appeal is now properly before this court.

**Analysis**

Defendant asserts that the trial court "erred in sentencing [Defendant] to three and [one-]half years eligible for release after one year at thirty-five percent." Defendant argues that the trial court abused its discretion when it relied on the State's proof of Defendant's criminal record. The State argues that the trial court had sufficient, competent proof to properly exercise its discretion and that the trial court did so in accordance with the principles and purposes of sentencing. We agree with the State.

On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016). The "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)).

While a trial court must place its reasoning for imposing a specific sentence into the record to allow for appellate review, "there is no requirement that such reasoning be particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706. A trial court's denial of probation "will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014); *see* T.C.A. § 40-35-210(b)(1)-(7).

Defendant argues that proof of his prior offenses at the sentencing hearing was not proper because there were no certified copies of judgments of his prior convictions and that the trial court "was going off the Notice of Enhancement submitted and filed by the State

and the Defendant['s] admissions." Defendant cites Tennessee Code Annotated section 40-35-202(a) in support of his argument, which in relevant part, reads:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea[.] . . . The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named in the record is the same as the defendant before the court, and is prima facie evidence of the facts set out in the record.

"The purpose of [Tennessee Code Annotated section § 40-35-202(a)] is to provide fair notice to an accused that he is exposed to other than standard sentencing. It is intended to order plea-bargaining, to inform decisions to enter a guilty plea, and to aid to some extent trial strategy." *State v. Williams*, 558 S.W.3d 633, 640 (Tenn. 2018) (quoting *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990)).

Here, the State filed the enhancement notice prior to Defendant's plea. Defendant agreed at the plea submission hearing that he was a Range II offender. While the trial court mentioned the twelve convictions on the enhancement notice, Defendant admitted in his testimony at the sentencing hearing to six of the out-of-state convictions shown on the NCIC report. The trial court did not abuse its discretion in relying on Defendant's admissions as proof of his prior convictions.

Defendant next asserts that the trial court's improper weighing of enhancement and mitigating factors resulted in error when it failed to sentence Defendant to full probation within the lower end or middle of the applicable range. Specifically, Defendant argues that the trial court lacked competent evidence to find that enhancement factor one applied. *See* T.C.A. § 40-35-114(1) (allowing enhancement of a sentence when "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"). Moreover, Defendant argues that the trial court should have considered mitigating factors three and eight because "Defendant was having a medical episode" at the time of the underlying criminal conduct. *Id.* § 40-35-113(3), (8) (allowing mitigating a sentence when "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury" and "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense").

In determining an appropriate sentence, a trial court must consider any evidence received at trial and the sentencing hearing, the presentence report, the purposes and principles of sentencing, any argument for alternative sentencing, the nature and characteristics of the criminal conduct involved, evidence regarding enhancement and mitigating factors, statistical information provided by the administrative office of the court regarding sentencing practices for similar crimes, any statement the defendant makes on his own behalf, and the results of a validated risk and needs assessment. T.C.A. § 40-35-210(a), (b). When adjusting the length of a sentence within the appropriate range, a trial court is guided by, but not bound by, any applicable mitigating and enhancement factors. *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008). The weighing of any applicable mitigating or enhancing factors is within the trial court's sound discretion. *State v. Nelson*, No. M2023-00176-CCA-R3-CD, 2024 WL 1192985, at *15 (Tenn. Crim. App. Mar. 20, 2024) (quoting *Carter*, 254 S.W.3d at 345), *no perm. app. filed*. Misapplication of a mitigating or enhancing factor does not invalidate a sentence unless the trial court wholly departed from the sentencing act. *State v. Mosley*, No. W2022-01424-CCA-R3-CD, 2024 WL 1406156, at *21 (Tenn. Crim. App. Apr. 2, 2024) (quoting *Bise*, 380 S.W.3d at 706), *perm. app. denied* (Tenn. July 18, 2024).

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). However, a defendant must establish suitability for probation by demonstrating that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002); T.C.A. § 40-35-303(b). "A sentence is based upon 'the nature of the offense and the totality of the circumstances,' including a defendant's background." *State v. Clark*, No. E2002-00667-CCA-R3-CD, 2023 WL 6442974, at *4 (Tenn. Crim. App. Oct. 3, 2023) (quoting *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991)), *perm. app. denied* (Tenn. Mar. 7, 2024). In considering whether to impose probation, a trial court should look at: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). A sentence of incarceration should reflect consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant," in addition to whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. §§ 40-35-103(5), (1)(A)-(C).

In this case, as part of Defendant's plea, he agreed that he was a Range II offender for sentencing.  A sentence for a Range II Class E felony is two to four years.  *See* T.C.A. 40-35-112(b)(5).  The trial court sentenced Defendant within range to three years and six months, with twelve months to be served incarcerated and the remainder on probation.  In determining the length of the sentence, the trial court considered Defendant's prior convictions and the fact that Defendant's criminal conduct did not cause or threaten serious bodily injury.  *See id.* §§ 40-35-113(1), -114(1).  It also considered, but ultimately rejected, Defendant's testimony that he was suffering from a "medical episode" at the time of his criminal conduct.  *See id.* § -113(3), (8).  On the record, the trial court considered all the factors set forth in Tennessee Code Annotated section 40-35-210(a) and (b).  The trial court found Defendant's mental and physical health and social history "concern[ing]."  The trial court also noted Defendant's criminal history, the six prior convictions to which Defendant expressly admitted at the sentencing hearing, and Defendant's lack of success with prior less restrictive measures.  *See id.* § -103(5), (1)(A)-(C).  After considering the required factors, the trial court found that it was in the interests of both society and Defendant to confine Defendant because attempts at rehabilitation short of incarceration had failed in the past.  *See id.*

Because the trial court considered the purposes and principles of sentencing and imposed a within-range sentence, the trial court did not abuse its discretion in sentencing Defendant.  Defendant is not entitled to relief.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.

s/ *Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE