IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2026

**STATE OF TENNESSEE v. KEVIN SMITH**

**Appeal from the Criminal Court for Shelby County**
**No. 23-03042          Chris Craft, Judge**
_____

**No. W2025-00242-CCA-R3-CD**
_____

Defendant, Kevin Smith, appeals his conviction for vandalism of property valued at $60,000 or more but less than $250,000, for which he received a thirty-year sentence as a career offender.  On appeal, Defendant contends that the evidence is insufficient to support his conviction.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which KYLE A. HIXSON, and STEVEN W. SWORD, JJ., joined.

Tony N. Brayton (on appeal) and William Johnson (at trial), Assistant Shelby County Public Defenders, for the appellant, Kevin Smith.

Jonathan Skrmetti, Attorney General and Reporter; Julia A. Johnson, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Scot Bearup and Brandon Wright, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural History**

Defendant was charged with vandalism of property valued at $60,000 or more but less than $250,000 as a result of damage that he caused to property located inside D.J.'s Coin Laundry in Memphis on September 30, 2022.  Defendant's case proceeded to trial in October 2024.

Mija Paik, the owner of D.J.'s Coin Laundry, testified that the laundromat consisted of twenty commercial washers, twenty-eight commercial dryers, a drink vending machine, a game machine, and a gumball machine. She did not own the game or gumball machines but had an arrangement with the owners where she received half of the profit generated from the machines. The laundromat was open daily from 7:00 a.m. until 9:00 p.m. An employee would open the laundromat every morning, clean for a few hours, and then leave by 9:00 a.m., and the laundromat was unattended until Ms. Paik and her husband closed it every night.

Ms. Paik testified that the machines were in proper working order when she and her husband closed the laundromat on the night of September 29, 2022, and that her employee did not report any damage to the machines to her when the employee opened the laundromat the next morning at 7:00 a.m. At approximately 9:30 a.m., while Ms. Paik was opening the grocery store that she owned located behind the laundromat, a customer entered the store and informed her that something had occurred inside the laundromat.

Ms. Paik went to the laundromat where she observed damage to some of the washers, some of the dryers, the bathroom, and the gumball and game machines. The gumball machine was broken, and its contents were on the floor. The glass in the doors to the damaged washers and dryers were broken; the doors themselves were bent; the tank lid from the bathroom toilet was on top of one of the washers; and the fire extinguisher had been sprayed inside the soap dispensers.

Ms. Paik contacted the police, and the responding officer obtained surveillance footage from inside the laundromat. The surveillance footage showed Defendant inside the laundromat beginning at approximately 9:18 a.m. on September 30, 2022. The footage showed Defendant throwing a chair at a machine, striking the washers and dryers using the lid to the toilet's water tank, breaking the gumball machine, and spraying the fire extinguisher into the washers' soap dispensers.

Officers arrested Defendant on October 2, 2022, and Defendant gave a statement in which he admitted to causing the damage. He maintained that he was frustrated when a washer did not refund money that he deposited into the machine. Officers lifted a fingerprint belonging to Defendant from one of the dryers. Ms. Paik testified that she did not give Defendant permission to damage or destroy the property.

Ms. Paik contacted her insurance company, and the agent instructed her to contact the vendor and obtain an estimate for the damage. Some of the washers and dryers were two years old, while others were purchased one month prior to the incident. The machines were still under warranty, and the repairs had to be performed by the authorized dealers to comply with the warranties. Ms. Paik contacted the authorized dealers, who came to the

laundromat and provided an estimate directly to the insurance company. She noted that fifteen washers and twelve dryers were damaged, that commercial washers generally cost $2,000 to $4,000 depending upon their size, and that dryers generally cost approximately $7,000. The insurance company issued a check to her in the amount of $230,187.71. She gave the check to the authorized dealers, who then repaired the damaged washers and dryers. Ms. Paik did not make any money from the insurance payment.

Because Defendant left only five washers in proper working order, Ms. Paik was not able to reopen the laundromat on September 30. Rather, the laundromat remained closed until the repairs were completed in mid-February of 2023.

The jury convicted Defendant of vandalism of property valued at $60,000 or more but less than $250,000. Following a sentencing hearing, the trial court sentenced Defendant to thirty years as a career offender at a service rate of sixty percent. Defendant filed a timely motion for new trial, which the trial court denied following a hearing. Defendant then filed a timely notice of appeal.

**Analysis**

On appeal, Defendant challenges the sufficiency of the evidence supporting his conviction. He maintains that the evidence presented at trial was insufficient to support the jury's finding that the value of the vandalized property was between $60,000 or more but less than $250,000. The State responds that the evidence is sufficient to support the conviction. We agree with the State.

We review a challenge to the sufficiency of the convicting evidence to determine whether, "after viewing the evidence in the light most favorable to the prosecution" and providing the State with "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom," "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citations omitted); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citations omitted); Tenn. R. App. P. 13. Our review "is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). Importantly, a guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal, shifting the burden to the defendant to demonstrate why the evidence is legally insufficient to support the conviction. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

We decline Defendant's invitation to revisit witness credibility or any purported discrepancies in the evidence because the jury, not this court, resolves all questions involving the credibility of the witnesses, the weight and value to be given to the evidence, and the factual disputes raised by such evidence. *See Dorantes*, 331 S.W.3d at 379 (citing *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). Accordingly, this court will neither re-weigh nor reconsider the evidence when evaluating the sufficiency of the convicting proof. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

As charged in this case, a person commits vandalism by knowingly "caus[ing] damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent[.]" Tenn. Code Ann. § 39-14-408(b)(1). Vandalism is a Class B felony if the value of the property is $60,000 or more but less than $250,000. *Id.* § 39-14-105(a)(5); *see id.* § 39-14-408(c)(1)(A) (providing that vandalism shall be punished as theft under Code section 39-14-105). The term "value" means "[t]he fair market value of the property or service at the time and place of the offense;" or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" *Id.* § 39-11-106(a)(39)(A). For an offense of vandalism pursuant to Code section 39-14-408(b)(1), "the value of the property includes the fair market value of repairing, cleaning, and restoring the property." *Id.* § 39-11-106(a)(39)(E).

"[T]his court has consistently held that the value of the cost of repairs is an appropriate method of determining the value of damage sustained by vandalized property." *State v. Friedmann*, No. M2023-00314-CCA-R3-CD, 2025 WL 1694886, at *16 (Tenn. Crim. App. June 17, 2025) (quoting *State v. Bolton*, No. W2012-02000-CCA-R3-CD, 2014 WL 12653829, at *9 (Tenn. Crim. App. Jan. 31, 2014)), *perm. app. denied* (Tenn. Dec. 11, 2025). This court also has "approved the use of replacement or repair costs to determine value when the fair market value has not been addressed and could feasibly have been determined." *Id.* (quoting *Bolton*, 2014 WL 12653829, at *16). "The jury is tasked with determining the value of the stolen or damaged property." *Id.* (quoting *State v. Goldberg*, No. M2017-02215-CCA-R3-CD, 2019 WL 1304109, at *9 (Tenn. Crim. App. Mar. 20, 2019)).

In challenging the sufficiency of the evidence, Defendant argues that the insurance payment received by Ms. Paik in the amount of $230,187.71 was not an accurate reflection of the value of the property damaged and "far exceeds even the replacement value of all the washers and dryers damaged in her business." However, the State presented evidence at trial that both the cost to repair the damaged machines and the cost to replace the damaged machines was equal to or greater $60,000 but less than $250,000. *See* Tenn. Code Ann. § 39-14-105(a)(5). Regarding the repair costs, the evidence presented at trial established that Ms. Paik filed a claim with her insurance company for the property

damage; the exclusive vendor of the commercial washers and dryers submitted a repair estimate totaling $230,187.71 to the insurance company; the insurance company issued a check to Ms. Paik for that amount; and Ms. Paik paid the entire amount to the vendor for repairs and did not profit from the insurance payment. We note that this court has affirmed a vandalism conviction when the value was based on the owner's testimony regarding the insurance payment that he had received. *See State v. Malone*, No. W2015-00152-CCA-R3-CD, 2016 WL 7664767, at *4 (Tenn. Crim. App. May 5, 2016) (concluding that the evidence was sufficient to support the defendant's conviction for vandalism of commercial air conditioning units as a Class C felony based on the owner's testimony that his insurance company paid him $61,000, which he used to replace and install new units). Regarding the replacement costs, Ms. Paik testified that fifteen washers and twelve dryers were damaged, that some machines were two years old while others were one month old, that the cost to replace each washer was $2,000 to $4,000, and that the cost to replace each dryer was $7,000. Thus, the replacement cost of the damaged machines far exceeded the $60,000 threshold necessary to obtain the conviction.

We conclude that the evidence, when viewed in the light most favorable to the State, was sufficient to support the jury's finding that the value of the vandalized property was equal to or greater than $60,000 but less than $250,000 regardless of whether the jury based its finding on the cost to repair or the cost to replace the damaged machines. Therefore, the evidence is sufficient to support Defendant's conviction, and he is not entitled to relief.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

- 5 -