IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2026

**STATE OF TENNESSEE v. KYLE BAPTISTE**

**Appeal from the Circuit Court for Hardeman County**
**No. 2024-CR-110    J. Weber McCraw, Judge**

_____

**No. W2025-01096-CCA-R3-CD**

_____

The Defendant, Kyle Baptiste, appeals his Hardeman County Circuit Court conviction of rape, for which he received a sentence of twenty years' incarceration.  On appeal, the Defendant challenges the sufficiency of the evidence to support the conviction.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which KYLE A. HIXSON and MATTHEW J. WILSON, JJ., joined.

Bo Burk, District Public Defender, and Matthew C. Edwards, Assistant District Public Defender, for the appellant, Kyle Baptiste.

Jonathan Skrmetti, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Mark Davidson, District Attorney General; Joe L. VanDyke and Falen Chandler, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.    FACTUAL AND PROCEDURAL HISTORY

The Defendant, Kyle Baptiste, was indicted by a Hardeman County grand jury on September 3, 2024, and charged with one count of rape and one count of aggravated assault.

The State voluntarily dismissed the aggravated assault charge, and the parties proceeded to trial by jury on the remaining rape allegation on January 7, 2025.

Special Agent David Nabors testified that he was employed by the Tennessee Department of Correction. On April 23, 2024, he received a report pursuant to the Prison Rape Elimination Act regarding an incident occurring at the Whiteville Correctional Facility in Hardeman County involving the sexual assault of an inmate. He drove to the facility and interviewed the victim, D.B.[1], who was receiving treatment in the medical unit. The victim appeared traumatized and stated that he was sexually assaulted with a broomstick by the Defendant, another inmate in the facility.

After interviewing the victim, Special Agent Nabors interviewed the Defendant. The Defendant initially denied knowing anything about the alleged incident. He later implied that the victim probably committed the act on himself because "[he] is into that type of thing." At some point during the interview about the sexual assault, the Defendant stated, "I did what I did." However, Special Agent Nabors acknowledged during cross-examination that the Defendant could have been referring to a physical, non-sexual assault, and that it may not have been a confession to rape.

Special Agent Nabors observed and photographed the victim's cell where the sexual assault occurred. He observed what appeared to be fecal matter on the floor, soiled clothing, and a white broomstick with fecal matter on it under the bottom bunk bed. Special Agent Nabors also observed and photographed injuries to the victim's face and arms at the facility. These injuries included redness and swelling to the left side of his face and his eye, a cut on his right thumb, bruising on his left leg, and "defensive wounds" to the back of his left arm and hand. Additional photographs were taken of the victim at Jackson-Madison County General Hospital. These photographs displayed injuries to the victim's "anus area" and shin. The photographs were introduced as exhibits. Special Agent Nabors averred that fecal matter covered approximately eighteen inches of the broomstick.

On cross-examination, Special Agent Nabors testified that after he interviewed the victim at the facility, he observed security camera footage outside of the victim's cell. He described seeing the Defendant walk to a broom closet and retrieve a broomstick. The Defendant then walked into the victim's cell. Another individual briefly entered the victim's cell and then "walked right back out." A third individual stood at the victim's cell door. Neither of these other inmates were identified by anyone at the time Special Agent Nabors observed the video. There was no video footage inside the victim's cell.

---

[1] It is the policy of this court to refer to victims of sexual assault by their initials to protect privacy.

Special Agent Nabors further testified that the victim stated during his interview that he had been accused of stealing a tattoo gun. The victim denied stealing or possessing the tattoo gun. He stated that he had been allowed to use it in the past to tattoo "whenever he wanted to or needed to." The victim also stated that he was not "affiliated" with a gang, but that the Defendant was "affiliated" with a gang. Special Agent Nabors admitted that the victim told him that the Defendant entered the victim's cell with a broomstick in one hand and a "homemade knife" in the other hand. However, no knife was ever recovered.

On redirect examination, Special Agent Nabors reviewed screen capture images from the security footage of the Defendant holding the broomstick before entering the victim's cell. He stated that the broomstick did not appear to have fecal matter on it at that time. Special Agent Nabors also clarified that he had been discussing the sexual assault allegation when the Defendant stated, "I did what I did."

The victim testified that several days before the offense, the Defendant told the victim he wanted the victim to give him a tattoo. The victim agreed that he would give the Defendant a tattoo and instructed the Defendant to "get his money up." The Defendant became "aggravated" with the victim over the next few days. He later accused the victim of stealing a missing tattoo gun. Around 8:04 p.m. on April 23, 2024, the victim was preparing to take a shower and had his pants down to his knees when he heard the Defendant "fierce[ly]" say, "Watch this door. Don't let . . . anyone in here." The Defendant then entered the victim's cell holding a makeshift knife and a broomstick. The Defendant said that he was going to either put the knife in the victim or "[the victim] was going to take . . . [an] ass beating with the broomstick[.]" The victim testified that he "didn't like either option," that he and the Defendant "got into a scuffle," and that the Defendant attempted "to stick the broomstick up [his] backend."

After the assault, the victim remained in his cell and made his cellmate sit in the common area of the pod until the 9:00 p.m. lockdown. When the pod officer let the cellmate into the victim's cell, the victim showed the officer the wounds he received from the Defendant.

On cross-examination, the victim stated that he was alone in his cell when the Defendant assaulted him and that no one else entered the cell. He believed the Defendant attacked him because the Defendant was in the same gang as the owner of the missing tattoo gun. He further stated that the knife was approximately ten inches long and that he did not know what happened to it. He did not find it in his cell after the assault.

Kimberly Szozda testified that she worked as an Internal Affairs Facility Investigator at the Whiteville Correctional Facility in April 2024. Her job was to investigate incidents between inmates. She arrived at the facility the morning after the

assault on the victim and received the report of the attack. She watched the security footage from a camera outside the victim's cell from the time of the assault, which depicted the Defendant entering the victim's cell and holding a broomstick. Another inmate, later identified as Daniel Fries, acted as "door security" by standing at the victim's cell door. Ms. Szozda and Special Agent Nabors interviewed the victim and the Defendant. She also stated that the Defendant said, "I did what I did" when questioned about inserting the broomstick into the victim's anus.

Ms. Szozda testified on cross-examination that she was unaware of a homemade knife being found. She also stated that she did not see a knife in the Defendant's hand when he entered the victim's cell. She acknowledged that a third, unidentified inmate entered the victim's cell after the Defendant exited.

Colton Moore testified that he was a nurse practitioner at the Jackson-Madison County General Hospital. The trial court recognized him as an expert in critical care without objection. Mr. Moore stated that he treated the victim on April 24, 2024. Medical records from the treatment were introduced as an exhibit. Mr. Moore stated that the records reflected that the victim told another nurse that he had been assaulted by another inmate who forcibly inserted a broom handle into the victim's rectum. Mr. Moore conducted a physical examination on the victim. He found that the victim had suffered multiple contusions and abrasions to his rectum, perineum, arms, and hands. There were superficial lacerations near his rectum and early signs of bruising in his buttock region. He stated that the victim displayed signs of rectal penetration, including blood mixed with stool coming from inside the rectal introitus. There were no rectal wall injuries or perforations. Mr. Moore opined that the injuries he observed to the victim were consistent with the allegation of rape.

Loraine Brown testified that she was employed as a correctional officer at the Whiteville Correctional Facility. She spoke with the victim around 8:45 p.m. on the night of the attack. The victim informed her that he could no longer stay in the pod. He then lowered his pants, and Officer Brown observed "a lot of blood." She notified her captain, and the victim was taken to the medical unit. The State rested.

Following a *Momon* colloquy, the Defendant elected not to testify or to present any additional testimony. Upon this proof, the jury found the Defendant guilty of rape as charged. The trial court entered judgment on March 13, 2025, sentencing the Defendant to serve twenty years' incarceration as a Range II offender at a 100% service rate, to be served consecutively to a prior Shelby County conviction. This timely appeal followed.

## II. ANALYSIS

- 4 -

On appeal, the Defendant's sole challenge regards the sufficiency of the convicting evidence. He argues that the State failed to prove his charge of rape beyond a reasonable doubt. The State responds that the evidence is sufficient. We agree with the State.

"Findings of guilt in criminal actions . . . shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The standard of appellate review on a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citations omitted); *see also State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *see also State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000)). "On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom." *State v. Wilson*, 211 S.W.3d 714, 718 (Tenn. 2007) (citing *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999)). "We do not reweigh the evidence . . . because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). The same standard of review applies "whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *Williams*, 558 S.W.3d at 638 (first citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); and then citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977)).

The indictment in this case alleged that the Defendant committed rape by the use of force. Therefore, the State was required to prove beyond a reasonable doubt that the Defendant unlawfully and forcibly sexually penetrated the victim. Tenn. Code Ann. § 39-13-503(a)(1). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body, but emission of semen is not required[.]" *Id*. § 39-13-501(7). "'Force' means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title[.]" *Id*. § 39-11-106(14).

The Defendant contends that multiple inconsistencies in the testimonies of the witnesses demonstrate that the State failed to prove the allegation of rape beyond a reasonable doubt. Specifically, he argues that the State did not prove that the Defendant

and the victim were alone in the cell during the attack, that the tattoo gun was never located, that no one other than the victim saw or located a "homemade knife," and that no tests were performed on the broomstick to determine if the substance was fecal matter. However, none of these facts constitute essential elements of the charged offense of rape, and the State was not required to prove any of them. The Defendant is simply requesting that we reweigh the credibility of the witnesses and the evidence. These issues were resolved by the jury, and it is not our province to revisit them. *Curry*, 705 S.W.3d at 183.

The evidence at trial, viewed in the light most favorable to the State, showed that the Defendant obtained a broomstick from a closet and entered the victim's cell. The victim testified that the Defendant attacked him with the broomstick and tried "to stick the broomstick up [the victim's] backend[.]" The hospital records noted that the victim told hospital personnel that the Defendant "used the broom handle to assault [the victim] from behind [by] inserting the broom handle forcibly into [the victim's] rectum." The victim had multiple injuries on his body, including injuries to his rectal area and perineum. He had dried stool and blood around his buttocks from inside his rectal introitus. The nurse practitioner testified that these injuries were consistent with rape. Finally, when questioned about the rape allegations, the Defendant stated, "I did what I did." This proof is sufficient to establish each element of the offense of rape by the use of force. The Defendant is not entitled to relief.

## III.    CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgment of the trial court.

s/ *STEVEN W. SWORD*

STEVEN W. SWORD, JUDGE