IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 14, 2025

**STATE OF TENNESSEE v. ERIC WAYNE HERNDON**

**Appeal from the Circuit Court for Gibson County
No. H-10786 Clayburn Peeples, Judge**

_____

**No. W2024-00657-CCA-R3-CD**

_____

A Gibson County jury convicted Defendant, Eric Wayne Herndon, of violation of an order of protection and aggravated stalking. Defendant received an effective sentence of two years' confinement. On appeal, Defendant contends that the evidence was insufficient to support his convictions for violation of an order of protection and aggravated stalking. After review, we conclude that the evidence was insufficient to sustain Defendant's conviction for violation of an order of protection, and we reverse that judgment and dismiss that conviction accordingly. We also conclude the evidence was insufficient to sustain Defendant's conviction for aggravated stalking, but we determine that the proof was sufficient to support the lesser-included offense of stalking, which was charged to the jury. Accordingly, we reverse Defendant's conviction for aggravated stalking, and we remand the case to the trial court for entry of an amended judgment reflecting a conviction for stalking and for resentencing on this modified conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed
and Remanded**

MATTHEW WILSON, J., delivered the opinion of the court, in which J. ROSS DYER, and JOHN W. CAMPBELL, SR., JJ., joined.

Cory Hancock, Selmer, Tennessee, for the appellant, Eric Wayne Herndon.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Frederick Agee, District Attorney General; and Scott Kirk and Jacob London, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

The victim in this case, Kathryn Cepparulo,[1] testified that she and Defendant had been in a relationship for five years before marrying in June 2022. Upon marrying, they lived together at the victim's home in Medina, Tennessee, along with her minor son A.S.[2]

The victim testified that on the evening of December 7, 2022, she returned home from work to find Defendant had been drinking and "reeked of alcohol." She stated that Defendant had been previously laid off from his job, and she asked Defendant "if he had been looking for a job that day." The victim recalled that the situation "escalated from there." Defendant was "yelling and screaming . . . dumped the couch over the floor . . . and threatened to kill" her. Defendant then "threatened to put a bullet in [the victim's] brain, causing her to be "scared for [her] life." The victim asked Defendant to leave. Defendant got his keys, cell phone, wallet, and gun and went out to his truck. Defendant then tried reentering the home; however, the victim had locked the door. When Defendant threatened to "blow the door off the hinges," the victim opened the door and left. On cross-examination, the victim agreed that Defendant had once stated he would shoot his boss; however, she did not treat this as a credible threat.

Thereafter, the victim was granted a temporary ex parte order of protection.[3] On December 17, 2022, while the temporary order was in place, Defendant parked his car on the victim's driveway and texted her, "[H]ey." The victim saw Defendant in her driveway and called the police, and Defendant was arrested in her driveway for violating the order of protection. She testified that she was "scared" on that occasion. Defendant was subsequently released on his own recognizance. On February 5, 2023, Defendant sent the victim "several long Snapchat messages" to her cell phone. The victim opened these Snapchat messages at the Medina Police Department. The victim testified that the messages stated that Defendant "was sorry and he wanted to come back home . . . he wanted to – to try to get back together." A warrant was issued for Defendant's arrest.

---

[1] Although the indictment identifies the victim as Kathryn Cepparulo Herndon, we will use her name as of the time of trial.

[2] Because it is the policy of this court to protect the identity of witnesses who are minors, we will refer to the victim's son by his initials.

[3] The initial temporary order of protection was not entered into evidence at trial and was not included in the record on appeal.

Following a hearing on February 15, 2023, at which Defendant was present, an order of protection was entered by the general session court.[4] The order, which was entered as an exhibit at trial, prohibited Defendant from contacting the victim or going to her home, effective February 15, 2023, to February 14, 2024. In the order, the court checked a box under the "Findings About Abuse" section that stated Defendant "Abused/Threatened to Abuse." Under that same section, however, the court did not check an available box stating that it adopted the facts listed in the petition or otherwise list any other of the court's findings.

On March 27, 2023, Defendant created an Instagram account and requested to follow the victim. The victim stated that she knew Defendant had created the account because the profile picture was of Defendant and the account included photographs of the victim and Defendant while they were still together. The victim took screenshots of Defendant's request, profile, and pictures, and these were admitted as a collective exhibit at trial. On May 28, 2023, Defendant entered the victim's backyard. According to the victim, her son had just entered the house from the backyard when she saw a man walking through an opening in the fence that had been knocked down by a storm. The victim recognized the man as Defendant as he came up to the kitchen window, peered into the house, and then ran off when he saw the victim and her son. The victim testified that she was "afraid" and "upset" and that Defendant "missed being in the backyard with my child by less than a minute."

A.S. testified that on May 28, 2023, he was in his backyard hitting a baseball. After coming inside, he saw Defendant peering through a window at the back of the house, which made A.S. "nervous" and "a little scared."

Officer Logan Taylor with the Medina Police Department testified that he received a call from the victim on May 28, 2023, that Defendant "had been looking through the window in her backyard." The officer said that on that date, he was aware of the active order of protection that prohibited Defendant from having contact with the victim. Regarding his department's policy with orders of protection, the officer said the department maintained a "notebook" that contained all active orders within the city limits. The officer said he arrested Defendant on May 28.

At the conclusion of the State's proof, Defendant made a motion for judgment of acquittal only as to the charge of violation of an order of protection. He argued that the general sessions court did not make "specific findings of fact in the order of protection that [Defendant] had committed domestic abuse," pursuant to Tennessee Code Annotated

---

[4] Although the transcript of the hearing was entered as an exhibit during the sentencing hearing, the transcript was not entered into evidence at trial.

section 39-13-113(f).  The trial court denied the motion.  Defendant did not present any proof at trial.

The trial court instructed the jury on the charges in the indictment, as well as the lesser-included offense of stalking.  The jury convicted Defendant of violation of an order of protection and aggravated stalking, as charged.  At the sentencing hearing, the trial court imposed an effective sentence of two years' confinement.[5]  Defendant did not file a motion for new trial but filed a timely notice of appeal.

## II.  Analysis

### A.  Sufficiency of the Evidence

Defendant contends the evidence was not sufficient to support his convictions for violation of an order of protection and aggravated stalking.  The State argues that the evidence was sufficient to sustain Defendant's convictions on both charges.

### 1.  Standard of Review

The standard of review for a claim challenging the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see also State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011); Tenn. R. App. P. 13(e).  "This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both."  *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)).

A guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal; therefore, the burden is shifted to the defendant to prove why the evidence is legally insufficient to support the conviction.  *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).  On appeal, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom."  *Id.* at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  In a jury trial, questions involving the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual disputes raised by such evidence, are resolved by the jury as the trier

---

[5] Defendant raises no sentencing issues on appeal.

- 4 -

of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 405, 410 (Tenn. 1990). Therefore, we are precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

Although Defendant asserts that the trial court erred in denying his motion for judgment of acquittal for the charge of violation of an order of protection, we review whether a trial court erred in denying a motion for judgment of acquittal under the same standard as whether the evidence was sufficient to sustain a conviction. *See State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995); Tenn. R. Crim. P. 29.

### A.  Violation of an Order of Protection

Defendant argues that the trial court erred by denying his motion for judgment of acquittal on the charge of violation of an order of protection. Specifically, Defendant argues that the general sessions court that issued the order did not make "specific findings of fact in the order of protection that [Defendant] had committed domestic abuse," pursuant to Tennessee Code Annotated section 39-13-113(f)(3). The State argues that the court made sufficient findings of fact for the purposes of Code section 39-13-113(f).

Under Tennessee law, it is a criminal offense to "knowingly violate" an order of protection. Tenn. Code Ann. § 39-13-113(a). In order to constitute a violation:

(1) The person must have received notice of the request for an order of protection or restraining order;

(2) The person must have had an opportunity to appear and be heard in connection with the order of protection or restraining order; and

(3) The court made specific findings of fact in the order of protection or restraining order that the person committed domestic abuse, sexual assault, or stalking as defined in § 36-3-601.

*Id.* § 39-13-113(f)(1)-(3).

As applicable to the instant case, "abuse" in the domestic context includes "inflicting, or attempting to inflict, physical injury on an adult  or minor by other than accidental means" or "placing an adult or minor in fear of physical harm [or] physical restraint." Tenn. Code. Ann. § 36-3-601(1) (Supp. 2022). "Domestic abuse" means committing abuse against a victim who falls into a category that

- 5 -

includes "[a]dults or minors who are current or former spouses." Tenn. Code. Ann. § 36-3-601(4), (5)(A).

The State argues that the general sessions court made specific findings of fact in the order of protection that Defendant committed domestic abuse, sexual assault, or stalking as required by Code section 39-13-113(f)(3) and relies on both the order of protection and the transcript of the hearing in which the court granted the order. Although the order was entered into evidence as an exhibit at trial, the transcript of the hearing during which the court granted the order was not. Thus, we are precluded from considering the transcript. *See State v. Richardson*, 697 S.W.2d 594, 595 (Tenn. Crim. App. 1985) ("In reviewing the sufficiency of the evidence, we must review only that evidence that was before the trier of fact."); *see also* Tenn. R. App. P. 13(c).

In the February 15, 2023 order of protection—under the "Findings About Abuse" heading—the general sessions court checked a box stating, "Respondent has specifically . . . Abused/Threatened to Abuse." The victim was listed as "Petitioner" in the order, but no other findings of fact were specified such as the nature of the abuse, how the victim was allegedly victimized, or the date any abuse occurred. Under these circumstances, we conclude that the order did not contain "*specific findings of fact*" that Defendant "committed domestic abuse, sexual assault, or stalking as defined in [Code section] 36-3-601" as required by the statute. *See* Tenn. Code Ann. § 39-13-113(f)(3) (emphasis added).

The State relies on our opinion in *State v. Richardson*, No. M2019-00952-CCA-R3-CD, 2020 WL 3485735 (Tenn. Crim. App. June 26, 2020), to argue that the order is sufficient to comply with Code section 39-13-113(f)(3). In *Richardson*, this court upheld the defendant's conviction for violation of an order of protection where the issuing court checked a box on the order of protection form indicating that the defendant "did the things listed in the Petition and the Court adopts these as facts and incorporates them by reference" and a box indicating that the defendant "abused/threatened to abuse" her daughter. *Richardson*, 2020 WL 3485735, at *2. On appeal, the petition for an order of protection, which the issuing court had adopted by reference in its findings of fact, was not included in the record. *Id.* at *1. Nonetheless, in addressing Code section 39-13-113(f)(3) and upholding the defendant's conviction for violation of an order of protection, we noted that while the record did not include what specific things the defendant had done that resulted in the order of protection, "it was only necessary to prove that the order of protection court had made such a finding" for the purposes of Code section 39-13-113(f)(3). *Id.* at *3. This court concluded that the order of protection included sufficient findings required by Code section 39-13-113(f)(3). *Id.*

- 6 -

*Richardson* is different. Here, while a box was included in the order of protection form which adopted the facts of the victim's petition by reference, the general sessions court did not check it. The only "findings about abuse" box checked on the form order was labeled "Abused/Threatened to Abuse." The form order did not otherwise indicate who the victim of the abuse was and lacked any other context besides the victim's status as the petitioner. Moreover, there was no testimony at trial regarding what was presented to the general sessions court or the court's findings of fact during the order of protection hearing. Hence, because the court did not make specific findings of fact in the order of protection pursuant to Tennessee Code Annotated section 39-13-113(f)(3), we must conclude that the evidence was legally insufficient to establish that Defendant knowingly committed the criminal offense of a violation of an order of protection.

## B. Aggravated Stalking

Under Tennessee law, stalking "means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Tenn. Code Ann. § 39-17-315(a)(4). The statutory term "course of conduct" "[m]eans a pattern of conduct composed of a series of two (2) or more separate, noncontinuous acts evidencing a continuity of purpose, including, but not limited to, acts in which the defendant directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to a person, or interferes with a person's property." *Id.* § 39-17-315(a)(1). Harassment "means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer emotional distress." *Id.* § 39-17-315(a)(3) (effective May 21, 2018 to June 30, 2023). A person who intentionally engages in stalking commits a Class A misdemeanor. *Id*. § 39-17-315(b)(2).

As relevant here, a person commits aggravated stalking who commits the offense of stalking, and "[a]t the time of the offense, was prohibited from making contact with the victim under a restraining order or injunction for protection, an order of protection, or any other court-imposed prohibition of conduct toward the victim or the victim's property, and the person knowingly violates the injunction, order or court-imposed prohibition." Tenn. Code Ann. § 39-17-315(c)(1)(E). Aggravated stalking is a Class E felony. *Id*. § 39-17-315(c)(2).

In challenging his aggravating stalking conviction, Defendant argues that the victim was not afraid of him. In support, Defendant contends the victim "just blew off" his statement about shooting his boss. Likewise, Defendant claims that had the victim

"actually feared" Defendant, she would not have been willing to walk past Defendant "with no hesitation whatsoever" after he threatened to shoot her door down. The jury, however, clearly credited the victim's testimony that she was afraid of Defendant and rejected Defendant's theory when they convicted him of aggravated stalking. This was the jury's prerogative, and we will not disturb the jury's findings on this issue, see *Bland*, 958 S.W.2d at 659.

Yet, when we look at the sufficiency of the evidence for Defendant's aggravated stalking conviction, we must consider what made the stalking aggravated. As Defendant was charged in the indictment, he was purportedly subject to an order of protection or any other court-imposed prohibition of conduct towards the victim. For the reasons stated above, the February 15, 2023 order was legally insufficient in that it did not make specific findings of fact to comply with the law. And while the victim testified generally about a previous temporary order of protection entered against Defendant that may have been in effect during some of Defendant's conduct, a copy of the temporary order was not entered into evidence at trial. The jury never saw it.

We acknowledge that the plain language of Tennessee Code Annotated section 39-17-315(c)(1)(E) encompasses a broader class of activity beyond that of committing stalking while under an order of protection. According to the statute, it is an offense to commit stalking while a defendant is under "any other court-imposed prohibition" of contacting a victim or the victim's property. *See* Tenn. Code Ann. § 39-17-315(c)(1)(E). However, other than the February 15, 2023 order, no proof of any court-imposed prohibition of Defendant's conduct was made a trial exhibit.

We conclude that there was insufficient evidence that Defendant committed aggravated stalking because the only evidence of aggravation was the defective February 15, 2023 order of protection. In reviewing the evidence, however, sufficient evidence does exist to sustain a conviction for stalking. Appellate courts may direct trial courts to enter judgment on lesser-included offenses when the lesser-included offenses were necessarily charged and proven at trial. *State v. Grisham*, No. E2015-02446-CCA-R3-CD, 2017 WL 1806829, at *25 (Tenn. Crim. App. May 5, 2017), *perm. appeal denied* (Sept. 20, 2017) (citing *State v. Parker*, 350 S.W.3d 883, 910 (Tenn. 2011)). The evidence, when viewed in the light most favorable to the State, established that Defendant and the victim separated after he threatened to kill her, by putting a "bullet" in her "brain." After he moved out, he texted her ten days later while sitting in her driveway and sufficiently scared her that she called the police. He sent her several Snapchat messages in March 2023, which she immediately took to the police department. Thereafter, on March 27, 2023, Defendant created an Instagram account and requested to follow the victim. The account included photographs of the victim and Defendant while they were still together. This repeated course of conduct culminated on May 28, 2023, when Defendant entered the victim's

backyard through a gap in the fence and proceeded to peer into her house through the kitchen window. When Defendant saw the victim and her son, Defendant fled. The victim testified that her son had just been in the backyard and that Defendant's actions made her "afraid" and "upset." This evidence is sufficient to support Defendant's conviction for stalking, a Class A misdemeanor.

## III. Conclusion

For the aforementioned reasons, we conclude that the evidence was insufficient to sustain Defendant's conviction for violation of an order of protection. Accordingly, we reverse that judgment and dismiss that conviction. We also conclude the evidence was insufficient to sustain Defendant's conviction for aggravated stalking, but we determine that the proof was sufficient to support the lesser-included offense of stalking. Accordingly, we reverse Defendant's conviction for aggravated stalking, remand the case to the trial court for entry of an amended judgment reflecting a conviction for stalking and for resentencing on this modified conviction.

s/ MATTHEW J. WILSON
MATTHEW J. WILSON, JUDGE