IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2025

## STATE OF TENNESSEE v. TYRONE MCCURDY

**Appeal from the Circuit Court for Madison County**
No. 22-230-A        Kyle C. Atkins, Judge
_____

**No. W2024-00512-CCA-R3-CD**
_____

A Madison County jury convicted Defendant, Tyrone McCurdy, of multiple counts of vandalism and theft, and the trial court imposed an effective sentence of twenty-two years to be served in confinement as a persistent offender.  On appeal, Defendant contends that the evidence was insufficient to sustain his convictions.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JOHN W. CAMPBELL, SR., JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Tyrone McCurdy.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Justin Prescott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Procedural and Factual Summary

The charges in this case stem from incidents in September 2021, when Defendant and his co-defendants, Paul Fincher and Wayne Crawford, stole copper components from appliances and caused damage to multiple properties in Jackson, Tennessee.  On February 28, 2022, the Madison County Grand Jury returned a fifteen-count indictment charging Defendant in six of the counts.  Defendant, along with co-defendant Fincher, was charged with vandalism of property valued at $2,500 or more but less than $10,000 (Count 1) and

theft of property valued at $1,000 or less (Count 2) belonging to Save-A-Lot; vandalism of property valued at more than $1,000 but less than $2,500 (Count 3) and theft of property valued at $1,000 or less (Count 4) belonging to Unity Temple; and vandalism of property valued at $10,000 or more but less than $60,000 (Count 5) and theft of property valued at $1,000 or less (Count 6) belonging to Resource Federal Credit Union. According to the indictment, Counts 1 through 4 occurred on or about September 22, 2021, and Counts 5 through 6 occurred on or about September 24, 2021. Co-defendants Fincher and Crawford were charged with multiple counts of theft and vandalism of property belonging to Unity Temple and two other businesses that occurred on different dates in September 2021. Defendant proceeded to trial in December 2023, during which the following evidence was presented.

Marliss Flowers, the superintendent of properties for Unity Temple who oversaw all the maintenance and loss prevention for the diocese, stated that in September 2021, Unity Temple was vandalized twice, during which the property's air conditioning units were "torn apart" and the copper wiring was removed from within the units. Mr. Flowers stated that he did not report the first incident but that after the second incident on September 22, 2021—for which Defendant was indicted—Mr. Flowers contacted police. He identified photographs of the damage from September 22 and testified that the damage cost $58,000 to repair.

Conley Welch testified that on September 22, 2021, he was employed as the store manager at the Save-A-Lot on Hollywood Drive in Jackson. Mr. Welch recalled that he was off work on September 22, 2021, but was called in because several meat coolers were not working. He stated that upon investigation, he discovered the copper piping within the coolers' compressors had been removed. He confirmed that no one had permission to remove the piping and that he contacted police. He testified that the damage cost $3,163 to repair.

Davida Barker, the President and CEO of Resource Federal Credit Union, testified that on the evening of September 23, 2021, and into the morning of September 24, 2021, two air conditioning units at the Credit Union's Old Hickory location in Jackson were stolen, and a third was damaged. Ms. Barker testified that upon discovering the theft, she contacted the police and provided them with the building's surveillance video footage. Ms. Barker identified still photographs taken from the night of the incident and stated that the damage cost $27,915 to repair.

Investigator Jeff Herndon of the Jackson Police Department ("JPD") testified that in September 2021 he was assigned to the thefts from Unity Temple, Save-A-Lot, and Resource Federal Credit Union. Investigator Herndon stated that as a part of his investigation, he interviewed Defendant. He stated that he first encountered Defendant,

who previously had been taken into custody, in a JPD interview room. Investigator Herndon explained that following the thefts, a "be on the lookout" ("BOLO") had been issued for Defendant and that Defendant identified himself as the man in the BOLO photograph. Investigator Herndon affirmed that Defendant waived his *Miranda* rights and provided a statement that officers reduced to writing and that Defendant signed. The written statement read:

> I live with my wife Jessica. Her father Paul also lives with us, along with Wayne Crawford. I do not know Paul's last name.
>
> Paul moved in with us about a month ago. My wife warned me about her father. Paul approached me about driving him around on the first time I picked up Paul at the church on Lexington Avenue. Paul loaded metal pipe into the van. We were at the church on Lexington Avenue.
>
> I later took Paul to Save A Lot. He took the copper from the AC units. The next location was on Carriage House Drive but we got scared off and did not get anything.
>
> The last location I took Paul to was the bank (credit union). I helped him bend the radiator but that was the only time I helped Paul.
>
> Wayne Crawford was not with Paul when I drove him around. I did not receive any money from driving Paul around.

On cross-examination, Investigator Herndon agreed that he told Defendant that he believed him. He further agreed that he told Defendant that he did not believe that he was the mastermind of the thefts and that he did not receive proceeds from the thefts.

Investigator Darrell Listenbee, JPD, testified that he was assigned to work the theft from the Credit Union. He stated that he obtained video surveillance footage from the business and developed a BOLO based on still images that he obtained from the footage. The BOLO contained images of two suspects, one of whom was Defendant, and the blue van used in the crimes. Investigator Listenbee affirmed that Defendant identified himself in the BOLO as the suspect wearing a lighter gray color hoodie, jogging pants, and Air Jordan sneakers.

Investigator Listenbee testified that on September 27, 2021, an owner of a scrap yard contacted JPD regarding two individuals attempting to sell scrap copper. Investigator Listenbee explained that the BOLO had been circulated to the scrap yard as part of the investigation and that the two men selling scrap copper were in the blue van pictured in the

BOLO. Investigator Listenbee stated that he went to the scrap yard and identified the two men as co-defendants Paul Fincher and Wayne Crawford. The van contained "cut-up pieces of copper pipe, other pieces of material that appeared to come off of an air conditioner unit . . . [and] some tools."

Investigator Listenbee testified that he asked the men if they owned the van, and when they answered no, he had them call the owner. Officers searched the registration of the van which returned to Defendant and his wife. Investigator Listenbee stated that when Defendant arrived at the scrap yard, he matched the individual identified in the BOLO, so he was taken into custody. Officers took photographs of the van and identified sunspots on the top of the van which matched those from the Credit Union surveillance video. Officers seized Defendant's shoes because they matched the color and design of the sneakers worn by the individual on the Credit Union video.

Investigator Listenbee, as did Investigator Herndon, testified regarding Defendant's interview with JPD. Defendant told Investigator Listenbee that he had taken co-defendant Fincher to Save-A-Lot, the Credit Union, and another location on Carriage House Drive on the date of the incident. Defendant told Investigator Listenbee that they got "spooked" at the location on Carriage House when Mr. Fincher cut a pipe and smoke came out.

Investigator Listenbee explained that after Defendant's interview, he accessed the City of Jackson's pole cameras, which continually record video footage around Jackson. He identified video footage from the day of the incident of a van pulling up to the side of the Save-A-Lot where the compressor was located. He further identified video footage of the same van on Carriage House Drive.

The record reflects Defendant elected not to testify or offer any proof on his own behalf.

At the conclusion of the trial, the jury convicted Defendant of all counts as charged with the exception of Count 3, in which the jury convicted Defendant of the lesser-included offense of facilitation of vandalism of property valued at $1,000 or less. During the sentencing hearing and upon the State's motion, the trial court dismissed the conviction in Count 3.[1] The court sentenced Defendant to an effective twenty-two years' confinement

---

[1] By the plain language of the statute, the crime of facilitation is restricted to felony offenses. *See* Tenn. Code Ann. 39-11-403(a). By concluding that the value of the property was less than $1,000, the jury reduced the offense to a Class A misdemeanor, and the law does not allow "for a conviction of facilitation of a misdemeanor." *State v. Spicer*, No. M2009-02270-CCA-R3-CD, 2010 WL 4069189, at *1 (Tenn. Crim. App. Oct. 19, 2010).

to serve at a rate of forty-five percent as a Range III, persistent offender.[2]  Defendant filed a motion for new trial, which the court denied following a hearing.  Defendant then filed a timely notice of appeal.

## II.  Analysis

Defendant contends the evidence produced at trial was insufficient to support the jury's verdicts.  The State responds that the evidence was sufficient to sustain Defendant's convictions.  We agree with the State.

## A.  Standard of Review

The standard of review for a claim challenging the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see also State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011); Tenn. R. App. P. 13.  "This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)).

A guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal; therefore, the burden is shifted to the defendant to show why the evidence is legally insufficient to support the conviction.  *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).  On appeal, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Id.* at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  In a jury trial, questions involving the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual disputes raised by such evidence, are resolved by the jury as the trier of fact.  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 405, 410 (Tenn. 1990).  Therefore, we are precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

---

[2] Defendant raises no sentencing issues on appeal.

## 2. Relevant Law

As charged in the indictment, a defendant commits vandalism when the defendant knowingly "[c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent[.]" Tenn. Code Ann. § 39-14-408(b)(1). A defendant violating subdivision (b)(1) is punished pursuant to the theft grading statute, Tennessee Code Annotated Section 39-14-105. *Id.* § 39-14-408(c)(1)(A). A defendant "commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). Theft of property valued at $1,000 or less is a Class A misdemeanor; theft of property valued at $2,500 or more but less than $10,000 is a Class D felony; and theft of property valued at $10,000 or more but less than $60,000 is a Class C felony. *Id.* § 39-14-105(a)(1), (3)-(4). "Effective consent" is defined as "assent in fact, whether express or apparent, including assent by one legally authorized to act for another." *Id.* § 39-11-106(a)(11).

The State sought Defendant's convictions of the offenses under a theory of criminal responsibility. "Criminal responsibility is not a separate, distinct crime." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999). Rather, it is a theory by which the State may prove a defendant's guilt predicated upon the conduct of another person. *Id.* As applicable to this case, a defendant is criminally responsible for an offense committed by the conduct of another person if:

> Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]

Tenn. Code Ann. § 39-11-402.

"[C]riminal responsibility is a codification of the common-law theories of aiding and abetting and accessories before the fact." *Lemacks*, 996 S.W.2d at 171 (citing *State v. Carson,* 950 S.W.2d 951, 955 (Tenn.1997)). As provided by the Sentencing Commission Comments, "[t]he revised code does not utilize these [common-law] terms; instead, it provides that any person may be charged as a party if he or she is criminally responsible for the perpetration of the offense." Tenn. Code Ann. § 39-11-401, Sent'g Comm'n Cmts. Under the common law tradition, any person who aided or abetted in the perpetration of a crime could be found guilty in the same degree as the principal who committed the crime. *Lemacks*, 996 S.W.2d at 171 (citations omitted). Like the common law tradition, "a defendant indicted and subsequently convicted of an offense by way of criminal

responsibility is considered to be a principal offender of the crime for the purposes of due process and our criminal law." *Id.*

"[U]nder the theory of criminal responsibility, presence and companionship with the perpetrator of a felony before and after the commission of the crime are circumstances from which an individual's participation may be inferred." *State v. Phillips*, 76 S.W.3d 1, 9 (Tenn. Crim. App. 2001) (citations omitted). "No particular act need be shown, and the defendant need not have taken a physical part in the crime." *Id.* To be criminally responsible for the conduct of another, the defendant must "in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree." *Id.* (internal quotation and citations omitted). The defendant's association must be made "knowingly, voluntarily and with common intent unite with the principal offenders in the commission of the crime." *State v. Foster,* 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988).

Defendant contends that the evidence was legally insufficient to sustain his convictions on all counts. Specifically, he argues that although he was "irresponsible for allowing his vehicle to be used by the co-defendant . . . [he] was not involved with stealing any of the items involved in this case." Defendant continues that "he did not participate in the vandalism of any of the items in this matter" and that "he neither participated [n]or facilitated the co-defendants in the vandalism of any property."

When viewed in the light most favorable to the State, the evidence shows that between September 22, 2021, and September 24, 2021, Defendant drove co-defendant Fincher to several locations across Jackson, where Mr. Fincher damaged various appliances to remove the copper components therein and then placed them in Defendant's van. Defendant admitted that at Resource Federal Credit Union, he helped co-defendant Fincher bend the radiator. These actions were completed without the permission of the property owners and caused thousands of dollars in damages. In addition to Defendant's signed written statement, he identified himself during his interview with JPD investigators as the individual wearing the light gray hoodie, jogging pants, and Air Jordan sneakers in the BOLO created from the Credit Union's surveillance video on the night of the theft. Defendant had sneakers matching the color and model as worn by the subject in the surveillance video. Under a theory of criminal responsibility, there is sufficient evidence for a rational finder of fact to find that Defendant acted with the "intent to promote or assist the commission of the [charged offenses]." Tenn. Code Ann. § 39-11-402(2). This evidence is sufficient to support Defendant's convictions. Accordingly, Defendant is not entitled to relief on this issue.

### III. Conclusion

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.


s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
