FILED

03/04/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 18, 2025 Session

## STATE OF TENNESSEE v. TONY CHARLES DAVENPORT

**Appeal from the Criminal Court for Cumberland County**
**No. 2022-CR-203   Gary McKenzie, Judge**

———————————————————

**No. E2025-00452-CCA-R3-CD**

———————————————————

The Defendant, Tony Charles Davenport, was convicted by a Cumberland County jury of reckless homicide, attempted second degree murder, and attempted voluntary manslaughter, for which he received an effective sentence of twenty-five years' incarceration to be served as a Range II, multiple offender. On appeal, the Defendant claims that the evidence was insufficient to support his convictions of attempted second degree murder and attempted voluntary manslaughter and that the trial court erred in imposing consecutive sentencing. The State responds that the Defendant's appeal is untimely and should be dismissed. Because we conclude that the Defendant's notice of appeal was untimely filed and that the interests of justice do not merit waiver of the untimeliness, we dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

STEVEN W. SWORD, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Joseph T. Wyatt (at trial and on appeal) and Jeffrey A. Vires (at trial), Crossville, Tennessee, for the appellant, Tony Charles Davenport.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Philip Hatch and Allison Null, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.     FACTUAL AND PROCEDURAL HISTORY

On June 27, 2022, a Cumberland County grand jury returned an indictment charging the Defendant with one count of premeditated first degree murder and two counts of attempted premeditated first degree murder related to offenses committed on March 18, 2022.[1] At trial, the jury convicted the Defendant of the lesser-included offenses of reckless homicide, attempted second degree murder, and attempted voluntary manslaughter.

## A. TRIAL

Much of the evidence at trial was uncontroverted. The Defendant went uninvited and armed to the residence of the victims, Corey Hillsman, Florence Easterly, and Ms. Easterly's son, Jacob Lewis,[2] on March 17, 2022, and on March 18, 2022. The Defendant was angry because he claimed that over a two-year period, his property had been stolen and vandalized, drugs had been sold near his home, and he had been harassed. The Defendant had reported the issues to local law enforcement. The Defendant suspected Mr. Hillsman, or someone in his residence, was guilty of the crimes, but he conceded he had no proof.

On the evening of March 17, 2022, the Defendant, who lived several streets away, walked to the victims' residence, armed with an AR-15, and kicked in their front door.[3] The Defendant then "shot a hole in the floor and put a gun to [Mr. Hillsman's] head." He admitted that he wanted to kill Mr. Hillsman, but he claimed he did not intend to do so. After a brief conversation, the Defendant decided to give his firearm to Mr. Hillsman. But the Defendant became upset when Mr. Hillsman told Ms. Easterly to call the police. The Defendant wanted Mr. Hillsman to return his firearm. A struggle for the firearm ensued between Mr. Hillsman, Mr. Lewis, and the Defendant, in which the Defendant suffered various injuries but did not regain control of his firearm. When outside the victim's residence, the Defendant again became angry when Mr. Hillsman said that he was going to call the police. The Defendant testified that he responded by "beating the living hell out of" Mr. Hillsman. The Defendant returned to his home on foot, but he did not call 911; he did send a text message to his eldest son, Zak, and sent him a photograph of some of his injuries. The Defendant's firearm was turned over to law enforcement on the evening of March 17, 2022.

---

[1] The indictment also included a charge of possession of a weapon by a convicted felon, but that count was severed from the other counts by agreement.

[2] Three of Ms. Easterly's sons lived in the residence with her and Mr. Hillsman.

[3] Mr. Hillsman testified that the door was damaged after being kicked in and did not lock properly afterwards.

Captain Mark Rosser of the Crossville Police Department returned to the victims' residence the next morning. The Defendant also attempted to return to the victims' residence that morning, but chose to park at a neighboring residence when he saw Captain Rosser there. He watched the residence and waited for the officer to leave. After Captain Rosser left, the Defendant pulled into the victims' residence, while Mr. Hillsman stood at the front door. The Defendant stated from his vehicle that he "was not [t]here to start anything" and asked for his firearm back from the previous night. Mr. Hillsman testified that when he told the Defendant that the police had the firearm, the Defendant's demeanor changed, and he jumped out of the vehicle with another firearm and approached the residence. Mr. Hillsman tried to close the door, and the Defendant started shooting and tried to push his way into the residence. Mr. Hillsman testified that he attempted to use his body to close the door, and he felt a gunshot to his right arm. Mr. Hillsman testified that Ms. Easterly, who was also present, helped him to try to keep the door shut and was shot three times.

Mr. Lewis then came to help try to keep the door closed and grabbed a sword to use to push the firearm away from the door and keep the Defendant out. The Defendant testified that it was Mr. Hillsman who brandished the sword from the beginning of the encounter and that he used the sword to attack the Defendant while another person tried to pull his firearm from his hands.

The Defendant stated his intent was to retrieve his firearm and not to kill. He claimed he wanted to retrieve his firearm from the previous night because he was a convicted felon and did not want to be arrested for being a felon in possession of the firearm. The Defendant admitted he was aware of the three victims and one other person living at the residence, and he shot the firearm while others were attempting to take it. Mr. Hillsman testified that the shots stopped after Mr. Lewis was shot in the hand. Mr. Hillsman then ran next door, and law enforcement and medical assistance subsequently arrived to find that Mr. Lewis was deceased from two gunshot wounds. Mr. Hillsman and Ms. Easterly also had gunshot wounds. Mr. Hillsman testified that neither he, Ms. Easterly, nor Mr. Lewis was armed with a firearm.

Captain Rosser responded to the shooting scene and noticed shell casings on the front porch and multiple bullet holes in the front door, with some gunshot residue indicating some of the shots had been at close range. David Gibson, a retired investigator from the Cumberland County Sheriff's Department, testified that on March 18, he received a call from the Defendant, with whom he was acquainted. After arriving at the Defendant's home, Investigator Gibson went inside and took possession of the Defendant's firearm and its associated magazines. Investigator Gibson told the Defendant that he should not have gone to the other residence and shot the victims, to which the Defendant responded, "Well, what would you have done in my shoes? . . . They keep stealing my tools, and they're

selling Fentanyl and causing [overdoses]." Investigator Gibson agreed the Defendant was cooperative, his hand was cut and bleeding, and his eye was almost swollen shut.

Brandon Davenport, a Special Agent with the Tennessee Bureau of Investigation, testified that he performed a mobile device examination of the Defendant's cell phone devices. He testified that on March 17, 2022, at 11:08 p.m., the Defendant sent a text message to his son Zak stating, "Love you man," along with a photograph of some of his injuries. Zak responded at 11:34 p.m., stating, "What you do[?]" On March 18, at 9:32 a.m., two hours before the homicide, the Defendant sent another text message to Zak stating, "I'll be in prison[.] You better take care of [N]ik," along with a photograph of his facial injuries from the previous evening. At 9:38 a.m., the Defendant sent his son another message stating, "It's over dude[.] I'm going back[.]" At 9:41 a.m., the Defendant sent another message to Zak stating, "Love you man," followed by a message at 9:41 stating, "If it weren't for Sam[,] they would have got me dude[.] [S]he was fighting as hard as I was[.]" At 10:49 a.m., the Defendant again texted Zak, "I love you[.]" The Defendant's final text message to Zak stated, "Don't lie igaf," and included a photograph of injuries to the Defendant's hand.

Upon this proof, the jury convicted the Defendant of reckless homicide, attempted second degree murder, and attempted voluntary manslaughter as lesser-included offenses of premeditated first degree murder and attempted premeditated first degree murder, respectively.

B. SENTENCING

At the May 22, 2024 sentencing hearing, the trial court detailed its findings on the range of punishment and the application of sentencing principles, including enhancing and mitigating factors. The trial court imposed within-range sentences of eight years for reckless homicide, six years for attempted voluntary manslaughter, and seventeen years for attempted second degree murder. The Defendant agreed he qualified for sentencing as a Range II, multiple offender and has raised no issue on appeal concerning the application of the enhancing and mitigating factors in determining the length of sentence for each offense.

The trial court also found the Defendant qualified for consecutive sentencing as a "dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). In reaching this decision, the trial court addressed the factors set forth in *State v. Wilkerson*, 905 S.W.2d 933, 937-39 (Tenn. 1995) (When a trial court bases the imposition of consecutive sentences solely on a defendant qualifying as a dangerous offender, the court must consider certain factors in determining that the consecutive

sentences are reasonably related to the severity of the offenses and are necessary to protect the public from further criminal conduct). The trial court found that the record of the Defendant's actions on the day of the incident and the evening before established the Defendant as a dangerous offender. The court explained:

> There's -- an individual who goes into a home armed, and then goes back the next day armed, and even when there was proof at the trial that there was [an investigator] at the residence, and the [D]efendant circled around and waited for them to leave, and then came back to the residence, these decisions, there wasn't much hesitation here. It was very, *I'm waiting for law enforcement to leave*, and then I come back to this very area where there's we know it's a hostile environment, considering what happened the night before, and I don't see that there was any hesitation when it was – there was also messages right after the event the night before that indicated that the [D]efendant was going back. There wasn't much hesitation of, *Maybe I shouldn't*. It was a committed process. It was a committed mindset that I'm headed back over there.

(italics in transcript).

The trial court found that the circumstances surrounding the commission of the offenses were aggravated, including the circumstances that occurred the evening before, which it noted was a crime "in and of itself." The trial court stated this was not a reckless homicide which occurred "out of the blue" from a dispute which resulted in a struggle with a firearm going off, but rather this was an incident which was the "carrying on of a dispute from the night before. And the [D]efendant placing himself back at that area with a weapon aggravates that recklessly, because it's . . . not just a single incident." The trial court then found that the Defendant's criminal history, his behavior of "taking the law into his own hands," and his possession of multiple firearms despite being a convicted felon indicated that confinement for an extended period of time was necessary to protect society from the Defendant's unwillingness to lead a productive life, and the Defendant's resorting to criminal activity in furtherance of an antisocial lifestyle.

The trial court then addressed the last *Wilkerson* factor that "the aggregate length of the sentence must reasonably relate to the offense of which the Defendant stands convicted." The trial court discussed the jury's findings concerning the lack of criminal intent in the verdict of reckless homicide, along with the presence of intent for attempted second degree murder and attempted voluntary manslaughter. The trial court then stated that it was imposing a sentence which would reflect the seriousness of the offenses and the aggregate length while still acknowledging the departure of the jury's verdicts from the charged offenses. The trial court then imposed partial consecutive sentencing, resulting in

a total effective sentence of twenty-five years' incarceration as a Range II, multiple offender.

The Defendant's judgments of conviction were entered on June 20, 2024. The only motion for a new trial in the record was filed on January 21, 2025. The State filed a response to the motion for a new trial on February 29, 2025, and the trial court held a hearing on the motion on March 4, 2025. On March 17, 2025, the trial court entered a written order denying the motion for a new trial, and the Defendant filed his notice of appeal on April 7, 2025.

## II.    ANALYSIS

On appeal, the Defendant claims that the evidence was insufficient to support his convictions of attempted second degree murder and attempted voluntary manslaughter and that the trial court erred in imposing consecutive sentencing. The State responds that the Defendant's appeal is untimely and should be dismissed. We agree with the State.

Tennessee Rule of Criminal Procedure 33(b) requires that a motion for a new trial be made in writing "within thirty days of the date the order of sentence is entered" to preserve issues for appellate review. The thirty-day timeframe imposed by Rule 33(b) may not be extended by the trial court, *see* Tenn. R. Crim. P. 45(b)(3), and a trial court is without jurisdiction to consider an untimely filed motion for a new trial, *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997). When a defendant files an untimely motion for a new trial, the trial court must dismiss the motion. *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989) (citing *State v. Williams*, 675 S.W.2d 499, 501 (Tenn. Crim. App. 1984), *abrogated on other grounds by State v. Thomas*, 687 S.W.3d 223, 242 (Tenn. 2024)).

The Defendant's judgments of conviction were entered on June 20, 2024. Accordingly, he had until July 22, 2024, to timely file his motion for a new trial.[4] The record contains the Defendant's January 21, 2025 first amended motion for a new trial. In his initial brief, the Defendant asserts that he filed a timely motion for a new trial following sentencing, but no such written motion is contained in the appellate record. At oral argument, the Defendant conceded that no such written motion was filed. Therefore, the trial court lacked jurisdiction to hold a hearing and rule on the untimely motion. *Dodson,* 780 S.W.2d at 780.

---

[4] Thirty days from entry of the judgments of conviction was on July 20, 2024; however, this date was a Saturday, so the next business day of July 22, 2024, was the deadline for a timely filed motion for a new trial. *See* Tenn. R. Crim. P. 45(a)(2).

As a result of his untimely motion for a new trial, the Defendant's notice of appeal is also untimely. Tennessee Rule of Appellate Procedure 4(a) requires that a notice of appeal be "filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]" Certain specifically enumerated motions toll the thirty-day timeframe for timely filing a notice of appeal, including a motion for a new trial. Tenn. R. App. P. 4(c). When a defendant files a timely motion for a new trial, "the time for appeal for all parties shall run from entry of the order denying a new trial or granting or denying any other such motion or petition." *Id*.; *see also State v. Byington*, 284 S.W.3d 220, 225 (Tenn. 2009).

The Defendant argues in his reply brief that his notice of appeal was timely because it was filed within thirty days of the trial court's ruling on his motion for a new trial. Because an untimely motion for a new trial is a legal nullity, it cannot toll the 30-day period for filing a timely notice of appeal. *Dodson*, 780 S.W.2d at 780. Thus, because the Defendant's motion for a new trial was untimely, the deadline for filing a notice of appeal was July 22, 2024, the first business day after the 30-day period. The Defendant filed his notice of appeal in this case on April 7, 2025, rendering it more than eight months untimely. *See State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *3 (Tenn. Crim. App. Nov. 9, 2023) (citing *State v. Glasgow*, No. E2020-00196-CCA-R3-CD, 2021 WL 6133870, at *8 (Tenn. Crim. App. Dec. 29, 2021) (finding the defendant's notice of appeal untimely when the motion for a new trial was filed one day late), *perm. app. denied* (Tenn. Apr. 20, 2022); *State v. Cooke*, No. M2019-01164-CCA-R3-CD, 2020 WL 3606451, at *2 (Tenn. Crim. App. July 2, 2020) ("Because [the defendant's] motion for new trial is untimely, his notice of appeal is also untimely."), *no perm. app. filed.*

However, the timely filing of a notice of appeal is not jurisdictional and may be waived in the interest of justice. Tenn. R. App. 4(a); *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. 2007). "In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *Rockwell*, 280 S.W.3d at 214 (quoting *State v. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005), *no perm. app. filed*). Importantly, the appellant bears the burden of perfecting an appeal or else demonstrating that the interests of justice weigh in favor of waiver. *State v. Thomas*, No. W2022-00109-CCA-R3-CD, 2023 WL 328337, at *3 (Tenn. Crim. App. Jan. 20, 2023) (citing *State v. Jones*, No. M2011-00878-CCA-R3-CD, 2011 WL 5573579, at *1 (Tenn. Crim. App. Nov. 15, 2011), *perm. app. denied* (Tenn. Apr. 11, 2012)), *perm. app. denied* (Tenn. June 7, 2023).

First, we consider the nature of the issues presented for review. *Rockwell*, 280 S.W.3d at 214. The Defendant initially argues that the evidence was insufficient to sustain his convictions of attempted second degree murder and attempted voluntary manslaughter

- 7 -

because these verdicts are inconsistent with the verdict of reckless homicide.  We review the sufficiency of the convicting evidence in the light most favorable to the State.  *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018).  Moreover, this court does not "reweigh the evidence . . . because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury as the trier of fact[.]" *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted).

The Defendant argues that because the jury found him guilty of reckless homicide of Mr. Lewis, it is legally and logically impossible for the jury to have also found him guilty of attempted second degree murder of Mr. Hillsman and attempted voluntary manslaughter of Ms. Easterly.  Citing *State v. Kimbrough*, 924 S.W.2d 888, 891-92 (Tenn. 1996), the Defendant seeks relief based upon the "incompatibility of the mental state requirements" of the convicted offenses and argues that it is "logically and legally impossible to attempt an unintentional killing."

The evidence in this case is uncontroverted that the Defendant knowingly and intentionally went armed to the victims' residence on March 18, 2022.  He admitted he was angry because of the events of the prior evening and because he believed the victims were responsible for stealing his property and harassing him.  He admitted he was concerned that, as a convicted felon, he could go back to prison for possessing the firearm the night before, and the victims had not returned his firearm to him.  When the Defendant learned the police had his firearm from the night before, he became upset and approached the victims' residence with another firearm.  He admitted he was aware of at least four individuals inside the residence, including Mr. Hillsman, Ms. Easterly, and Mr. Lewis.  He admitted to firing three rounds while struggling for the firearm, and that when the residents turned loose of the firearm, he continued to fire at the door.  The Defendant admitted to shooting seven shots through the door while the residents were inside. The Defendant intentionally fired his firearm, which was a substantial step towards causing the deaths of the occupants of the residence.  Mr. Hillsman testified that the Defendant fired multiple shots through the front door while he was trying to push the door open, and Mr. Hillsman and Ms. Easterly were trying to hold the door closed.  Mr. Hillsman also testified that Mr. Lewis used a sword to try to "push" the Defendant and his weapon out of the doorway.

This evidence clearly is sufficient to establish that the Defendant acted with the required mental state for each of the offenses for which he was convicted.  Additionally, despite the Defendant's argument concerning inconsistent mental states, there is no requirement of consistency in verdicts between multiple counts in an indictment where the evidence supports the verdicts.  *Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn. 2015).  Accordingly, the nature of the Defendant's challenge to the sufficiency of the convicting evidence weighs against waiver.

The only additional issue the Defendant raises is that the trial court erred in imposing consecutive sentencing. The Defendant generally argues that the specific statutory criteria and general principles of sentencing did not justify consecutive sentencing as a dangerous offender, but the only specific issue he raises is that his behavior on the date of the incident failed to indicate little or no regard for human life. The State responds that the trial court did not abuse its discretion in imposing consecutive sentencing.

We review a trial court's sentencing determinations for abuse of discretion. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Additionally, where the trial court imposes a within-range sentence "and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles" of the Sentencing Act, we afford its sentencing determinations a presumption of reasonableness. *Id.* A trial court abuses its discretion in the context of sentencing determinations by applying an incorrect standard of law or reaching a decision contrary to logic or reasoning, which causes prejudice to the complaining party. *State v. Bonds*, 502 S.W.3d 118, 166 (Tenn. Crim. App. 2016) (citing *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

If a defendant is convicted of more than one offense, the trial court must determine whether the sentences should be served concurrently or consecutively. Tenn. Code Ann. § 40-35-115(a). The trial court may, in its discretion, align a defendant's sentences to be served consecutively upon finding by a preponderance of the evidence that a defendant qualifies under at least one of the categories for consecutive sentencing enumerated in Tennessee Code Annotated section 40-35-115(b). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *State v. Pollard*, 432 S.W.3d 851, 862 (Tenn. 2013). The trial court may impose consecutive sentences if the defendant is a "dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). When a trial court bases the imposition of consecutive sentences solely on the dangerous offender factor, the court must find that the consecutive sentences are reasonably related to the severity of the offenses and are necessary to protect the public from further criminal conduct. *Wilkerson*, 905 S.W.2d 933 at 937-39.

This evidence and the trial court's findings previously set forth are clearly sufficient to establish that the Defendant qualified as a dangerous offender. Accordingly, the nature of the Defendant's challenge to the imposition of consecutive sentencing weighs against waiver.

Next, we consider the reasons for and the length of the delay in seeking relief. *Rockwell*, 280 S.W.3d at 214. Based on his initial appellate brief, the Defendant appeared

unaware of the untimeliness of his notice of appeal until the State argued that the appeal should be dismissed because the Defendant failed to file a timely motion for a new trial or a notice of appeal. The Defendant initially states in his reply brief that the notice of appeal was timely, but he then alternatively argues that any mistake was that of appellate counsel and should not be interpreted to the Defendant's detriment. Appellate counsel argues that he believed that an initial motion was made either in writing or orally within the thirty days following the judgments. He does not explain why the Defendant would have been unable to file a "skeletal" written motion that could have served as a placeholder and been amended later, as the Defendant claims it was mistakenly believed to have been filed. *See State v. Lowe-Kelley*, 380 S.W.3d 30, 34 (Tenn. 2012) (recognizing "the possibility that the circumstances of a case may require a 'skeletal motion'" for a new trial followed by a later amendment to ensure a motion is timely filed) (citing Tenn. R. Crim. P. 33, Adv. Comm'n Cmt.). This court has held that the absence of a reasonable explanation for the untimely filing of the notice of appeal weighs against waiver. *See, e.g., State v. Smith*, No. E2023-01416-CCA-R3-CD, 2024 WL 4554632, at *6 (Tenn. Crim. App. Oct. 22, 2024), *no perm. app. filed*; *Manning*, 2023 WL 7439203, at *5 ("[T]he absence of an apparent reason for the delay weighs strongly against a waiver[.]"). We do not find the explanation reasonable in this case, and the eight-month delay in filing a notice of appeal was substantial. Accordingly, the Defendant's reasons for and the length of the delay in seeking relief weigh against waiver.

The final *Rockwell* factor considers "any other relevant factors presented in the particular case." *Rockwell*, 280 S.W.3d at 214. Among the "other relevant factors" are whether the defendant acknowledges the late filing, requests a waiver of the timely filing requirement, or responds to the State's argument seeking dismissal of the case. *Id.*; *Manning*, 2023 WL 7439203, at *6. Here, the Defendant responds to the State's argument in his reply brief seeking waiver, but in a brief and conclusory manner. The Defendant requests that this court waive the defect in the interest of justice because he relied upon counsel and is not well-versed in the law. The Defendant does not address the *Rockwell* factors in his reply brief, even though the appellant bears the burden of demonstrating that the interests of justice weigh in favor of waiver. *Thomas*, 2023 WL 328337, at *3. This court finds that the Defendant's brief and conclusory statements do not satisfy his burden.

Accordingly, we conclude that the interests of justice do not merit the waiver of the Defendant's untimely notice of appeal.

### III. CONCLUSION

Following our review of the record and based upon the foregoing analysis, we conclude that the Defendant's motion for a new trial and notice of appeal were untimely

filed.  Because the interests of justice do not merit waiver of the untimeliness of the Defendant's notice of appeal, his appeal is dismissed.


S/ *STEVEN W. SWORD*_____
STEVEN W. SWORD, JUDGE